BAKER, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 26 — June 1, 1887.*

*Bastardy: Costs: Error, review upon: Evidence: Officer de facto.*

1. In a bastardy case, the evidence as to the intimacy and intercourse between the parties need not be confined to the very day charged in the complaint as the one on which the child was begotten.
2. An error in the admission of testimony is to be disregarded, if it was so immaterial that it could not have misled the jury.
3. A judgment will not be reversed because of the allowance of leading questions to a witness, or of the non-exclusion of prejudicial remarks by counsel to the jury, unless there was a manifest abuse of discretion on the part of the court.
4. It is not error for the court, after giving an instruction as requested by a party, to add a more complete instruction on the same point, as to the law applicable to the particular facts in the case.

5. Evidence as to the declarations of a witness, made out of court, is not admissible for the purpose of impeaching him, unless he has first been particularly questioned in regard to them. He cannot be impeached by so contradicting answers made by him to questions put by the impeaching party as to matters not pertinent to the issue.

6. A person acting as a justice of the peace in the incorporated village of Sparta, under color of an election to that office, not by the electors of the village alone, but by those of the town and village of Sparta combined, must be regarded as such officer de facto, whether so de jure or not, and his authority to take an examination in a bastardy case cannot be inquired into collaterally in the subsequent proceedings.

7. In a bastardy case, if the accused is found guilty, the party prosecuting, whether it be the mother, or a member of the town or county board, or that board itself, is entitled to recover full costs.

ERROR to the Circuit Court for *Monroe* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

June 26, 1882, a complaint was made by the mother of a child before Samuel Hayt, a justice of the peace in Sparta, to the effect that on or about August 15, 1880, the plaintiff in error did beget upon her a bastard child, of which she was delivered April 23, 1881. Thereupon a warrant was issued, and *Baker* was brought before the justice, where he pleaded not guilty; and subsequently, and upon examination, it was found by the justice that there was probable cause that he was guilty, and he was accordingly held to bail. The cause was tried in the circuit court in April, 1883, when he was found guilty, and thereupon the verdict was set aside for intervening error. April 8, 1884, *Baker* filed a plea in abatement on the ground that the justice before whom the proceedings were instituted had, without authority, assumed to act as justice of the peace for the town of Sparta, whereas he was not a resident or an elector of said town, but was a resident and elector of the village of Sparta, organized under ch. 178, P. & L. Laws of 1866;

and that all said proceeding were in the village. The plea having been overruled, the cause was again tried in April, 1884, when the jury disagreed. Thereupon the cause was again tried in April, 1885, and the jury returned a verdict of guilty as charged in the complaint. *Baker* thereupon moved to set aside the verdict, and for a new trial upon several grounds stated, which was overruled.

Among the grounds so stated were the remarks of counsel for the prosecution in his closing argument to the jury, which were as follows: "I have been told that there are men upon this jury who have expressed and formed an opinion. That may be true, and it may not be true; for the glory of American liberty, for the glory of American jury system, I trust in God that it is not so, and I cannot believe that it is. If it is so, the men upon that jury who have done that know so themselves, and their consciences will trouble them from this day down to the time when they go to the grave." Also: "And what has *James Baker* done? Here is his child. Every lineament in his face shows it, and he has done nothing for his support whatever,— nothing whatever," — to each of which the defendant duly objected, and which objections the court overruled, and defendant excepted. Also: "The manner in which she has dressed that boy, and the manner in which she has dressed herself,— all those things show very conclusively and very plainly that she has done nobly. *Defendant's Counsel.* I ask for a ruling on that. *Mr. Dickinson.* When an allusion is made to this child, why am I interrupted? They cannot prevent you from looking in that boy's face who is here. *Defendant's Counsel.* I ask the court to rule on that. *Court.* He says it is *James Baker's* child. I don't suppose that is anything out of the way, because that is what he is arguing," — to which the defendant duly excepted. Also: "I have seen her hunted and persecuted as the hound does the deer, and she has been treated awfully from these men, and in this

last trial they have been brought to some terms of decency, that they have never showed before. They have left out much that before they had brought into this case." *Court.* You should not comment upon what has been done outside of this trial." Also: "It is true I am not getting very much pay in this case. If I had been getting pay, I should quit it long ago. But I am in this case for the good of law; for the good of order. I have had some very able assistance in this case. I have been associated with the Hon. J. M. Morrow, district attorney of this county, for several years, and from its very infancy, too. The prosecuting attorney of this county was with me in this case. The first proceedings we had in this case my friend Mr. Morrow undertook. He was the law officer of this county, and he pursued this case with all the zeal his noble nature is capable of exercising in the trial of a case. *Court.* You are outside of the record,"—to all of which the defendant duly objected, and which objection the court overruled, and the defendant excepted.

Thereupon judgment was rendered against *Baker* in accordance with the verdict, and as a part thereof, in effect, that *Baker*, on or before September 1, 1885, pay to the clerk of the court, for the use and benefit of the county of Monroe, the sum of $2,853.91, including $2,256.17, that being the amount ascertained and fixed by the court as the amount expended by said county in the prosecution of the action. From that judgment *Baker* brings this writ of error.

For plaintiff in error there was a brief by *Bleekman, Tourtellotte & Bloomingdale* and *Geo. Graham*, and oral argument by *A. E. Bleekman.* They contended that the circuit court acquired no jurisdiction in this case, there having been no examination of defendant before a justice of the peace and adjudication of probable cause to believe him guilty, citing secs. 1531-3, R. S.; *State ex rel. Dilworth v. Brown,* 31 Wis. 600; *Baker v. State,* 56 id. 573. Nor had he waived examination. *Rindskopf v. State,* 34 Wis. 217;

*State v. Vogel*, 22 id. 471. The person acting as justice in this case claims under an election by the electors of both the town and village of Sparta, which was unauthorized by law and void, and did not give him color of office. P. & L. Laws of 1866, ch. 178, sec. 3; P. & L. Laws of 1871, ch. 411, secs. 6, 7; *Jones v. Kolb*, 56 Wis. 263; 5 Field's Lawyers Briefs, sec. 137; 4 C. L. Mag. 809. The evidence as to the alleged intercourse should have been confined to the day stated in the complaint. *Freeman v. Freeman*, 31 Wis. 235, 239, 240; *Cunningham v. State*, 65 Ind. 377; *Hull v. People*, 41 Mich. 167; *Hamilton v. People*, 46 id. 186; *People v. Hendrickson*, 53 id. 525; *State v. Witham*, 72 Me. 531.

The court erred in permitting the plaintiff to put leading questions to his own witness, in receiving evidence of mere impressions, and in rejecting impeaching evidence. 1 Greenl. Ev. 435, 440–444, 462; 1 Wharton on Evidence (2d ed.) sec. 435.

The verdict was against evidence, and should have been set aside for that reason, and also because of improper remarks made to the jury by the plaintiff's attorney, which prejudiced the defendant. *Spurgeon v. Clemmons*, 6 Neb. 307; *Watson v. Comm.* 95 Pa. St. 418; *Daegling v. State*, 56 Wis. 586; *State v. Smith*, 61 Iowa, 538; *Cunningham v. State*, 65 Ind. 377; *State v. Gutekunst*, 24 Kan. 252; *Angelo v. People*, 96 Ill. 209; *Earll v. People*, 99 id. 123, 136; *State v. Read*, 71 Mo. 200; *Eanes v. State*, 10 Tex. App. 421; *Cross v. State*, 68 Ala. 476; *State v. Graham*, 62 Iowa, 108; *State v. Martin*, 74 Mo. 547; *Scott v. State*, 7 Lea (Tenn.), 232; *Brown v. Swineford*, 44 Wis. 282.

The county had no interest in the proceedings, and it was error to tax costs in its favor. Secs. 1530, 1532, 1540, R. S.; *State v. Crouse*, 86 N. C. 617; *State v. Mushied*, 12 Wis. 561; *State v. Jager*, 19 id. 235; *Eaton v. Williams*, 51 id. 100; *Baker v. State*, 56 id. 568.

For the defendant in error there was a brief by *Dickinson &*

*Graham* and *D. F. Jones*, and oral argument by *G. W. Bird*.

CASSODAY, J. The complaining witness was born in January, 1862, and was never married. The accused was five or six years older. Without going into details, we have no hesitancy in holding that there is plenty of evidence to sustain the verdict.

Numerous errors are assigned and vigorously urged by the learned counsel for the plaintiff in error.

1. It is urged that the circuit court got no jurisdiction, because *Baker* never waived an examination, and never had an examination before a qualified justice of the peace. This is based upon the claim that the village was a separate, independent organization; that the justice resided therein; that he was elected by the electors of the town and village of Sparta combined, and not by the electors of the village alone, as he should have been. Assuming such to be the facts, still, as there was such an office *de jure* in the village as justice of the peace, and as the person who here acted as such was ostensibly elected to fill the office, we must regard him as being such officer, at least, *de facto*, and hence must hold that his authority for performing such official acts cannot be inquired into collaterally in this action. Such has been the uniform ruling of this court. *In re Boyle*, 9 Wis. 264; *State v. Bloom*, 17 Wis. 521; *Laver v. McGlachlin*, 28 Wis. 364; *State v. Bartlett*, 35 Wis. 293; *C. & N. W. R. Co. v. Langlade Co.* 56 Wis. 627–629; *Cole v. Black River Falls*, 57 Wis. 110.

2. Error is assigned because the court did not confine the testimony to occurrences between the parties August 15, 1880. The complaint alleged that the child was begotten " on or about " that time. After the complainant had stated her previous acquaintance with *Baker*, the fact that he lived in the town in 1880–81, and his business there, she was

allowed, against objection, to answer this question, "State how you have known him?" We discover no objection to this question, nor the answer in response to it. After stating that the two families both lived in the same neighborhood, within a half a mile of each other, and visited back and forth, she stated, without objection, in effect, that he began to pay particular attention to her in the spring of 1880; that in June, 1880, he asked her if she loved him, and she finally told him that she did; that July 5, 1880, they attended a dance, and danced and ate supper together; that he then informed her that he loved her, and wanted her to become his wife; that she consented, but that no time was set for the marriage; that the next time he paid her any special attention was a week after, at his uncle's, when he took her riding in the evening; that the next time she received any special attention from him was on the evening of July 25, 1880, when he took her and his sister out riding, and then, after leaving his sister at her home, he took her out riding alone from 8 to 10 o'clock in the evening. She was then asked this question, " What occurred that evening when you was riding with him?" Thereupon counsel objected " to any testimony in regard to any of these transactions, except at the time they claim the child was begotten, on the 15th day of August." This objection was overruled by the court, and she then testified, in effect, to their attempted intercourse, not then accomplished by reason of its effect upon her. This was also given under objection. Were such rulings error? It seems to us they were not. The evidence elicited related to a time within the usual period of gestation,— in fact, much nearer the time ordinarily supposed for the conception of a child born when this was than the time named in the complaint. This was probably the principal objection to it. Had the jury been restricted to the shorter and more improbable time named in the complaint, it is possible they might have had more

doubt as to the accused being the father of the child. But the time was not definitely fixed in the complaint. On the contrary, the time there named was preceded by the words "on or about." Absolute certainty in cases of repeated intercourse, or what is supposed to be attempted intercourse, even on the part of the mother, is not required. *Hamilton v. People*, 46 Mich. 186. Besides, as stated by Mr. Greenleaf: "The birth of a child being liable to be accelerated or delayed by circumstances, the question is purely a matter of fact, to be decided upon all the evidence, both physical and moral, in the particular case." 2 Greenl. Ev. § 152.

For similar reasons the objections made to the testimony of the witness Hall, as to admissions made by the accused in June or July, 1880, were properly overruled.

3. The girl had, in her testimony, described the place in her father's woods pasture where the accused met her, and committed the offense; that she and her father walked from the spot to their house in nine minutes; that her father had made a correct map of the premises, from which she described the location to the jury, and the manner of their meeting. Her father was then sworn, and without objection described the premises; that the girl went down in the pasture with him, and showed him where she met the accused, August 15, 1880; and that he made the map, and marked the spot on it as well as he could. Exception is taken because he was then allowed to answer this question, "Where is the spot that F. told you she met defendant on the 15th?" The objection was general, and we think properly overruled. If it was error at all, still the testimony thereby elicited was so immaterial that it could not have misled the jury, and must therefore be disregarded.

4. Exception is taken because the prosecution, after having called Lafe Richards as their own witness, were allowed to put leading questions to him. It appears that previously

Baker vs. The State.

one Enoch Baker had testified to certain statements made by Richards and others in the presence of the accused, and to certain admissions made by the latter tending to prove his guilt. In view of the several questions put to Richards, and the character of his answers to the same, we are inclined to think he was an unwilling witness. Besides, in such matters it frequently occurs that the actions of a witness on the stand speak much louder than his words. For this, and other obvious reasons, the time and circumstances under which leading questions may be put to a witness is a matter necessarily resting in the sound discretion of the trial court, and consequently a judgment will not be reversed on that ground, unless there has been a manifest abuse of such discretion.

5. Exception is taken because the accused's counsel was not allowed to ask his witness Isham this question: " State whether, at the time, he [Enoch Baker] told you, ' I am a friend of yours [the accused,] but I don't like the old man, [his father.] *I shall help James all I can.* I believe it was a put up job. I think the Davidsons will swear to anything to beat him.' " The difficulty with this question was that no sufficient foundation had been laid for it by putting it as a whole to the witness Enoch Baker, or by putting the portion of it in italics to him at all. The necessity for laying the foundation for such impeachment is well understood by the profession, and needs no repetition. Besides, Baker's answers to the questions put to him on the part of the accused, as to his *belief* upon the whole matter, or as to some of the witnesses for the prosecution, was collateral and irrelevant to the issue on trial, and hence the accused was bound by them.

6. Exceptions were taken to remarks of counsel for the prosecution in opening and closing the case. In opening the case he stated, in effect, that the accused would introduce testimony touching the character of the complainant,

Baker vs. The State.

and as to what he tried to prove upon the former trial; but, upon objection being made, the court promptly ruled that he must confine himself to stating to the jury the cause of the prosecution, but that he must not state the cause of the accused to the jury. This was certainly a sufficient protection to the accused from being prejudiced by anything thus stated. The remarks of counsel for the prosecution in his closing argument to the jury, to which exceptions are taken, are stated above. We are not prepared to say from the record that any portion of these remarks was prejudicial to the accused. Some of the remarks related to matters directly in issue; others, to matters more remotely or collaterally in issue. Some, apparently, in response to or suggested by remarks of opposing counsel. Of course, the remarks of counsel are to be restricted to matters in the case on trial. But this is not always confined to such evidence as is pertinent to the issue on trial. Other evidence frequently gets into a case by consent of parties or without objection. So there may be, and frequently is, some fact or circumstance occurring upon the trial which is properly open to the comment of counsel, and yet never becomes a part of the record in the appellate court by being incorporated into the bill of exceptions. Counsel necessarily have a broad latitude. Where counsel on one side transcend their privilege, counsel on the other side may, without jeopardizing their case, follow them, and indulge in proper comments upon the same matter. *Hoffmann v. State*, 65 Wis. 46. This is substantially what is claimed to have been done here. The trial judge is necessarily familiar with all such facts and circumstances, as well as all shades of the evidence. He must necessarily have a broad discretion in such matters. *Santry v. State*, 67 Wis. 67. Error is not to be presumed in such a case. If counsel abuse their privilege, or the trial court its discretion, it should be made to appear affirmatively by incorporating all essential facts

and circumstances showing it in the record. *Hoffmann v. State, supra.* We cannot say from this record that there was any such abuse of privilege or discretion.

7. The court read to the jury an instruction requested on the part of the accused, and then followed it with this comment, to which exception is taken: "If there is any evidence, gentlemen, that the complainant was, at improper or suspicious times, in improper or suspicious relations with any man, it is proper for you to consider it as bearing upon this question: whether this other man, and not the defendant, is the father of the child; but you are not at liberty to make any guess that is not founded upon the testimony, nor to found a verdict or conclusion upon mere suspicion, that you do not find arising from the testimony." Having given the counterpart of the proposition at the request of the accused, there can be no valid objection to the more complete instruction as to the law applicable to the particular facts. Mere opportunity for intercourse is not very convincing as evidence. *Freeman v. Freeman,* 31 Wis. 242.

8. Exception is taken because costs were taxed against the accused for moneys expended in the prosecution by the county in the payment of the fees of the clerk of the court, the sheriff and witnesses. As a general rule, costs, in this state, are purely a matter of statute. *In re Carroll's Will,* 53 Wis. 228. Our statutes in cases like these are specific. The issue upon the trial of every such cause must be whether the accused is guilty or not guilty. Sec. 1535. If he is found guilty, he must be adjudged to be the father of the child, and stands chargeable with its future maintenance in such sum and in such manner as the court directs, *and also for all expenses incurred by such town or county, or by the mother* of the child for the lying-in and attendance of her during her sickness, and also for the care and support of such child since its birth, *and for the costs of the prosecution,*— all of which matters are to be ascer-

tained and fixed by the court, *and inserted in the judgment*. Secs. 1532, 1535, 1536. Such is to be the judgment in every case where the accused is found guilty, whether the complaint is made and the cause prosecuted by the mother of the child, or a member of the town or county board, or commenced by her and prosecuted by such board. Secs. 1530, 1539, 1540, R. S. The right to recover costs, thus expressly given by statute, is just as imperative when the costs are very large, as here, as when they are very small.

*By the Court.*— The judgment of the circuit court is affirmed.