## LATHERS, Respondent, vs. WYMAN, Appellant.

*April 11 — April 29, 1890.*

*Conversion: Instructions to jury: Evidence: Market value: Measure of damages: Practice: Remarks of counsel to jury.*

1. In an action for conversion a charge that if the property converted belonged to the plaintiff — if his claim thereto was supported by the evidence — he was entitled to recover, was not objectionable as ignoring an estoppel pleaded in the answer, where the court afterwards fully instructed the jury on the subject of estoppel in such a way that they could not have been misled.

2. There is no error in the refusal to give instructions which are inapplicable to the evidence or are covered by the general charge.

3. In an action for the conversion of plows of a peculiar kind which had been manufactured for sale in Nebraska, the testimony of a witness that he had manufactured such plows in the west, and was acquainted with the selling value of them in Nebraska, and had sold such plows there at prices named, is *held* sufficient to show their market value in Nebraska.

4. There being substantially no market for such plows where taken, their market value in Nebraska, and the cost of transporting them thither and of selling them, might be considered by the jury in determining their value where taken; and the extent of the defendant's liability is not affected by his ignorance of the fact that the plows were intended for the Nebraska market.

5. A statement by plaintiff's counsel to the jury that the defendant thought he would take the plows and buck it through, and if plaintiff got them at all it would be at the end of an expensive lawsuit, is not shown by the record to have been improper.

APPEAL from the Circuit Court for *Rock* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

The complaint alleges, in effect, that March 5, 1888, the plaintiff was the owner and in the lawful possession of the iron-work of fifty breaking plows, of the value of $653, and that on that day the defendant wrongfully and unlawfully took possession of said property, and unlawfully converted the same to his own use, to the plaintiff's damage in said

sum; and further alleges special damages, by reason of such conversion, in the sum of $55; and demands judgment for $708, and interest thereon from March 5, 1888. The answer, in addition to a general denial, justified the taking of ten plows set up, and forty plows in pieces, as being the property of one E. L. Wagner, upon an attachment, and subsequently on execution, in favor of the defendant and against said Wagner and another; and also alleged certain facts from which it is claimed by the defendant that the plaintiff was estopped from recovering in this action.

At the close of the trial, at the April term of the circuit court for 1889, the jury returned a verdict in favor of the plaintiff and against the defendant in the sum of $315. From the judgment entered upon that verdict the defendant appeals.

The cause was submitted for the appellant on the brief of *Nolan & Cunningham*, and for the respondent on that of *Smith & Pierce*.

CASSODAY, J. The principal controversies of fact in this case were as to whether the fifty plows, or rather the parts of the fifty plows, taken by the defendant on writs of attachment and execution against the property of E. L. Wagner and another, were, at the time so taken, in fact the property of Wagner or the property of the plaintiff; and if they were the property of the plaintiff, then whether the plaintiff had said or done anything to estop him from recovering in this action. Both of these questions were submitted to the jury, and both resolved by them in favor of the plaintiff.

Upon the question of such ownership there was evidence tending to show, in effect, that the plaintiff resided at Shopiere in the town of Turtle, and was the son-in-law of E. L. Wagner; that Wagner was a blacksmith, and had worked at that business for many years, and, among other

places, in the west; that a short time prior to November, 1887, Wagner was indebted to the plaintiff for money borrowed a long time before, in the sum of $500 and interest; that it was then agreed between them that the plaintiff should furnish the shop and all the materials, and that Wagner should manufacture for the plaintiff 100 plows for breaking new prairie, of the description given, in time to be sold in Nebraska during the season of 1888,— that is to say, between April 1 and July 4, 1888; that the plaintiff was to pay him for such services at the rate of seven dollars for each plow so manufactured; that such services in making the first eighty or eighty-one of said plows should be applied on said indebtedness and in satisfaction thereof; that, in pursuance of such agreement, the plaintiff rented a shop in Turtleville in said town, to be used for such manufacture and until the plows should all be manufactured, and bought coal to run the shop, and purchased iron, steel, wood, handles, beams, clevises, material, and stock out of which to manufacture the plows; and that on November 20, 1887, Wagner commenced such manufacture, and continued the same until March 6, 1888, when the parts of the fifty plows were taken by the defendant; that at that time such fifty plows were fully completed, except it would have required about seventeen days' additional work, worth two dollars per day, to complete the same; that ten of them were fully completed and set up. There is plenty of evidence that the plaintiff demanded possession of the property, and requested its return, soon after it was first taken; and that such demand and request was repeated as often as one attachment went down for defects in the proceedings, and the property seized on another.

Exception is taken because the court charged the jury upon the ownership of the property, in effect, that, if the plows in question belonged to the plaintiff,— if his claim to them was supported by the evidence,— then he was en-

titled to recover; and, on the other hand, if they belonged to Wagner, then he was not entitled to recover. The objection to such charge is that it ignored that branch of the defense based upon estoppel. Manifestly the jury could not have been misled in that particular, since the court subsequently very fully and fairly charged the jury on the subject of estoppel. There is no repugnancy nor inconsistency in the two portions of the charge, and they should be considered together. Besides, the evidence on the part of the defendant, on the subject of estoppel, is so weak as to generate much doubt as to whether the defendant was entitled to have that question submitted to the jury.

The defendant requested two instructions on the subject of estoppel. The first was to the effect that if the property was so taken by the officer and the defendant " in good faith," then that the plaintiff was bound to notify the defendant or the officer in the manner therein stated. The evidence is substantially conclusive that such notification was given, or at least such demand and claim of the property on the part of the plaintiff was made, as to dissipate any pretense of good faith on the part of the defendant, and hence to render such instruction inappropriate to the evidence. The second of such instructions is to the effect that if the plaintiff in bad faith intentionally neglected to give such full and sufficient notice, and thus permitted such retention and sale of the property, and the defendant took and sold the same in good faith, then the plaintiff could not recover. This, as a whole, is inapplicable to the facts, and besides, so far as applicable, is covered by the general charge. It follows that the several exceptions taken to the charge and rulings of the court as to the ownership of the property and the subject of estoppel, must be overruled.

The principal questions of law involved relate to the damages recoverable and recovered. On the question of

damages, there is, in addition to the evidence mentioned, testimony on the part of the plaintiff to the effect that the plow was known in the western country as "the grasshopper plow;" that Wagner had manufactured them in the western country during most of the ten years next preceding the trial; that there was a cutter, a standard, and a lay to it; that in place of the mould-board there were iron rods to turn over the sod; that the plows were made with a bottom; that the lay was bolted to it, and the cutter was bolted on the side of the plow and a standard; that the length of the rods taken together was about ten feet for a sixteen-inch plow, and eleven feet for an eighteen-inch plow; that there were other little irons to hold the handles and such things; that the lay, the land-side and the standard, without the rods, weighed from forty-three to forty-five pounds; that the rods weighed about one pound for each foot of the iron; that the lay and point of the plow were all steel; that the land-side and standard were all iron; that there were six eighteen-inch plows and forty-four sixteen-inch plows; that they were made for the western country, where there were no stones and only heavy sod; that there was substantially no market for them where made; that the material on each plow cost about $3.75; that the iron-work on ten of the plows was completed, and the plows were set up at the time they were taken; that it required about seventeen days' work to complete the parts of the other forty that were taken; that the complete cost of manufacturing the iron-work by Wagner out of the material so furnished by the plaintiff was $7 for each plow, without counting the coal or shop-rent; that the wood-work for the fifty plows which were not taken by the defendant was of the value of $45; that the plaintiff had an agreement with his brother-in-law residing at Hoard, Neb., for setting up the plows when they should arrive there, and putting one coat of paint on them, and selling them at a

commission of $1.50 each; that the cost of transportation was about seventy-five cents each; that the selling value of such plows at Hoard, Neb., was $14 each for the sixteen-inch plows, and $15 each for the eighteen-inch plows.

If such evidence was competent and reliable, then it is manifest that, had the fifty plows been completed, shipped, and sold as contemplated, there would have been realized on the sale over $700, and nearly $600 over and above the cost of transportation and commissions; and that the cost of such plows at the place of manufacture would have been $537.50, besides coal and shop rent. Were we to deduct from that sum a liberal estimate for the value of the wood-work not taken, and the seventeen days' work still necessary to complete the forty plows, we should still have an expenditure upon the plows by the plaintiff of a considerable over $400. The verdict is only $315. To reduce the amount of damages, the defendant called two witnesses, Thompson and Babcock. One of them, a manufacturer at Beloit, testified, in effect, that the iron-work on those plows ready to put together was worth $6 each for the sixteen-inch plows, and $7 each for the eighteen-inch plows,— making, in the aggregate, $306, which, with the interest for a year, would have been a considerable more than the verdict; and that witness concedes, on cross-examination, that such plows completed were worth what they would sell for in Nebraska, less the cost of transportation and commissions. The other witness put the value at considerable less.

Exception is taken because, upon the subject of damages, the court charged the jury that "if you find the plaintiff is entitled to recover, he is entitled to recover the value of the property taken, with interest on it from the time it was taken from his possession; that would be at least as early as the 28th of May, 1888, I think it is. And it is the value of that which was taken, with interest from

that time, and not the value of things that were not taken. And it is the value of those things taken *at Shopiere at the time they were taken*, and interest on that value, which is the measure of the plaintiff's damages in this case, if he is entitled to recover. But in arriving at that value, if these plows were manufactured for a particular market in Nebraska, and the plows, when fully completed with handles, beams, clevises, and rods, and the lay and the upright part, were worth there either $14 or $15, you may take that into consideration *in determining what the value was here.* That, is, you may determine what the value of the beams, handles and clevises were, how much it would cost to put them together, so that they would be complete plows, with rods and all, and deduct the value of what was not in them from the value of the entire plows when finished, including the cost of selling them in Nebraska," and " including the cost of transportation;" that " if one of those sixteen-inch plows could be sold for $14 in Nebraska, when it was completed, and it would cost seventy-five cents to get it there from Turtleville, and it cost $1.50 for selling it, and the handles would cost so much, and the beams so much, and clevises so much, and the rods so much, and the putting them together so much, that must all be deducted from the price of the complete plows to ascertain, or may be done *to ascertain, the value of what was taken in this case.* So you are to take into consideration the value as testified to by other witnesses for the purpose of determining what the value was *at Turtleville.* Take into consideration the testimony of Mr. Thompson and of Mr. Babcock, and all the testimony, so far as it throws any light on the question of value." Manifestly the charge restricted the jury to the value of the parts of the plows actually taken, at the time they were taken, at Turtleville, or which is substantially the same thing, at Shopiere, as the two places are very near to each other.

Error is assigned for the admission of that portion of the evidence mentioned relating to the wood-work of the plows not taken, and also the admission [of that portion of such evidence relating to the arrangement for selling the plows in Nebraska, and the market value of such plows at that place, on the ground that there was no evidence tending to show a market value for those plows in that state. Of course, the defendant prevented these particular plows from ever being offered for sale in that market. But Wagner testified, in effect, that he had manufactured such plows in the west, and was acquainted with the selling value of them at Hoard, Nebraska, and that he had sold such plows there at the prices named, and even higher. The portion of the charge quoted, to the effect that in arriving at the value of the parts of the plows taken at Turtleville the jury might take into consideration the market value of such plows in Nebraska, with the deductions and qualifications therein mentioned, seems to be sanctioned by the adjudications of this and other courts. *Cockburn v. Ashland Lumber Co.* 54 Wis. 619; *Hill v. Chipman,* 59 Wis. 211; *Hamilton v. Magill,* 12 L. R. (Ire.) 186; *McMahon v. Field,* L. R. 7 Q. B. Div. 591. Such is the law, even in actions on contract. This is an action for a tort. The jury found, in effect, that the defendant, under cover of legal process against another, wrongfully and unlawfully took away and converted to his own use the plaintiff's property, and thus broke up his business and prevented the anticipated sales. This being so, it would be manifestly unjust for the defendant to escape payment of such damages as were the natural, proximate, and direct consequence of his wrongful acts. Nor is the defendant to be exonerated from any such damages, merely because the evidence fails to show that he knew the plows were being manufactured for the Nebraska market. According to Mr. Sutherland, " the general rule in tort is that the party who commits a trespass or other

wrongful act is liable for all the direct injury resulting from such act, although such resulting injury could not have been contemplated as the probable result of the act done." 3 Suth. Dam. 714, and the numerous cases there cited. This court has frequently sanctioned the same principle. *Brown v. C., M. & St. P. R. Co.* 54 Wis. 342; *McNamara v. Clintonville,* 62 Wis. 213; *Gates v. N. P. R. Co.* 64 Wis. 71. The result is that we find no error in the charge, nor in admitting any of the evidence mentioned.

Exception is taken because counsel for the plaintiff, in summing up the case to the jury, stated, in effect, that the defendant thought he would take the plows and buck it through, and if the plaintiff got them at all it would be at the end of an expensive lawsuit. We find nothing in the record authorizing us to hold such remark to have been an abuse of the privilege of counsel. The province of counsel, and what should appear in the record in order to justify this court in reversing a case for the abuse of such privilege, have been so frequently pointed out as to need no repetition. *Baker v. State,* 69 Wis. 40-42.

*By the Court.*— The judgment of the circuit court is affirmed.

ORTON, J., dissents.