Gregory vs. Rosenkrans.

GREGORY, Respondent, vs. ROSENKRANS, Appellant.

*December 17, 1890 — January 13, 1891.*

(*1*) *Mortgages: Ice cut by lessee before foreclosure: Fraud.* (*2-5*) *Evidence: Conversion: Quantity and value: Appeal: Immaterial errors.*

1. The mortgagee and purchaser on foreclosure sale of ice-houses and of the right to cut ice from a pond acquired no title to the ice cut and stored in the ice-houses by a lessee of the mortgagor prior to the foreclosure sale; and in an action against him by the lessee for the conversion of such ice, the mere fact that there was a deficiency upon the foreclosure sale does not place him in a position to attack the lessee's title on the ground of fraud.
2. After testifying as to the terms of an agreement, a party stated that it had been reduced to writing and signed. The court refused to strike out the oral testimony. Afterwards it appeared that the witness was mistaken and that the agreement had not been reduced to writing. *Held,* that this cured the error in refusing to strike out.
3. In an action for the conversion of the ice stored in certain ice-houses, it was not error to allow the station agent to testify as to the number of car-loads shipped therefrom by the defendant, and as to the amount contained in each car, as appeared by the books of the rail-

way company, although such testimony did not purport to give the exact quantity so shipped.

4. Where the ice was converted in March at a place about forty miles from Milwaukee, evidence of its value in Milwaukee in the following September was admissible to aid in determining its value at the time and place of conversion.

5. The admission of evidence as to the quality and value of ice for the previous season was an immaterial error, such evidence being so remote and insignificant.

APPEAL from the Circuit Court for *Milwaukee* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This action is for the alleged wrongful conversion, September 6, 1886, of 1,800 tons of ice, cut and stored by the plaintiff in ice-houses owned, at the time it was stored, and in possession of John Atkins, at Palmyra, and so stored with the consent of said Atkins until the plaintiff should desire to sell the same, and which ice was worth one dollar a ton in said ice-houses. The complaint alleges that, after it was stored, the defendant acquired title to the ice-houses, took possession of the ice, and converted the same to his own use, and on or about September 6, 1886, sold the same to parties in Chicago.

The answer, in addition to a qualified general denial, pleads by way of counterclaim and defense, in effect, the following facts: That December 6, 1881, John Atkins obtained a lease from one Brockway and wife of fifteen acres of land on the mill-pond in Palmyra, for the term of five years, for the purpose of erecting buildings thereon for storing ice, and constructing a side track therefrom to the railroad, for the purpose of shipping ice from the pond, buildings, and track, with the right to remove said buildings, etc., in case he did not purchase the premises for $500 upon the option secured in the lease; that December 6, 1881, Atkins also obtained from Ritter and Horton the exclusive right to cut and take ice from said lake or pond for the

period of five years, which lease and agreement were re-
corded; that March 1, 1882, Atkins gave to the defend-
ant a note for $3,000, on account of money borrowed by
him to construct said buildings, secured by an assignment
of said lease and agreement, and a chattel mortgage on all
said buildings and other personal property upon the prem-
ises; that in April, 1883, Brockway and wife gave to one
Sleep an equitable mortgage by way of warranty deed on
the lands covered by said lease, to secure the payment of
$690, which was subsequently assigned to the defendant;
that August 10, 1883, Atkins gave the defendant a second
chattel mortgage upon said buildings and personal property,
to secure the same debt and interest; that June 10, 1884,
the plaintiff filed a mechanic's lien on said buildings for a
claim of $3,547.36 for materials furnished, and commenced
an action to foreclose the same, in December, 1884, against
Atkins and Sleep, and recovered judgment therein, Febru-
ary 2, 1885, for $3,894.41, and, in June, 1885, advertised
said property to be sold on said judgment; that the defend-
ant, upon ascertaining the fact, and on July 6, 1885, began
an action to foreclose said mortgages, lease, and agreement,
and to restrain the plaintiff in this action, Atkins, Sleep, and
the sheriff from selling on the judgment in the mechanic's
lien suit, and January 22, 1886, obtained judgment of fore-
closure therein for the sum of $4,369.72, and making the
injunction therein perpetual; that thereupon the sheriff ad-
vertised said property to be sold on said foreclosure judg-
ment, and the same was sold to the defendant, March 19,
1886, for the sum of $1,200, and a sheriff's deed thereupon
given to him, accordingly, with a judgment for deficiency
of $3,260.47; that the defendant might have sold the ice in
question at the same time for $3,000, had it not been for
the threats of the plaintiff, by virtue of which the defend-
ant claimed $2,000 damages; that the defendant did sell the
ice, September 6, 1886.

Gregory vs. Rosenkrans.

The plaintiff replied denying the counterclaim. On the trial of that action the plaintiff was nonsuited, and from the judgment thereon he appealed to this court, and on that appeal the judgment was reversed and the cause remanded for a new trial. On the cause being remanded to the circuit court, the plaintiff moved the court to strike out all of the answer after the qualified general denial, and said motion was granted accordingly. Thereupon the cause was tried, and at the conclusion of the trial the jury returned a verdict in favor of the plaintiff, and assessed his damages at $1,019.28. From the judgment entered on that verdict the defendant appeals.

*Geo. W. Bird,* for the appellant.

*G. W. Hazelton,* for the respondent.

CASSODAY, J. The striking out of that portion of the answer wherein the defendant attempted to allege title in himself to the crop of ice harvested in January and February, 1885, under and by virtue of the foreclosure and sale mentioned in the foregoing statement, was the logical result of the decision of this court in this case on the former appeal. 72 Wis. 220. It was there held that " a mortgagee and purchaser on foreclosure sale of ice-houses, and of the right to cut ice from a pond, does not acquire title to ice cut and stored in the ice-houses by a lessee of the mortgagor prior to the foreclosure sale." The reasons for such holding, given by Mr. Justice ORTON on that appeal, need not be here repeated. It is true there was a deficiency on that foreclosure and sale, but the defendant did not acquire thereon, by execution levy or otherwise, any specific lien on the ice in question; and the answer can in no sense be regarded as a creditors' bill, under sec. 3029, R. S. This being so, and the plaintiff having proved an apparently good legal title to the ice, the defendant, as such mere creditor, is in no position to attack the validity of the

plaintiff's title on the ground of fraud or otherwise. *Manson v. Phœnix Ins. Co.* 64 Wis. 26; *Ullman v. Duncan, ante,* p. 213.

On the trial, the plaintiff was examined as a witness in his own behalf, and testified in effect to the agreement made between him and Atkins in December, 1884, whereby he obtained the right to harvest the ice in question and acquire the title thereto, and, among other things, that a written contract embodying such agreement was drawn up and signed by him and Atkins. The defendant thereupon moved to strike out such parol testimony on the ground that the writing was the best evidence. The plaintiff was then further examined as to the absence and whereabouts of such writing, and its contents. Subsequently, the plaintiff's counsel produced a writing signed by the plaintiff and Atkins January 17, 1885, solely relating to the amount due from the latter to the former. The plaintiff thereupon identified the writing so produced as the one mentioned, and as the only writing ever signed by him and Atkins, but which did not embody the agreement which he had orally testified as having been made by him and Atkins. It is obvious, from the plaintiff's whole testimony, that he was simply mistaken when he swore that his agreement with Atkins about harvesting the ice was in writing. He had manifestly confounded that agreement with the writing mentioned. However erroneous may have been the refusal to strike out the oral testimony when made, yet we think it was cured and rendered immaterial by the subsequent explanations made by the witness.

We perceive no error in allowing the station agent to testify as to the number of car-loads of ice shipped by the defendant from Palmyra in September, 1886, nor as to the amount contained in each car, as appeared from the books of the railway company. True, such testimony did not

purport to give the exact quantity so shipped, but it tended to prove such quantity, and was, as we think, admissible.

The learned counsel for the defendant contends that the conversion of the ice took place, if at all, at Palmyra, about March 19, 1886, and hence that it was error to allow proof of its value in Milwaukee in September, 1886. But the proof thus admitted was merely to aid in determining the value at Palmyra at the time of the conversion, and for that purpose it was admissible. *Lathers v. Wyman*, 76 Wis. 616.

The court in effect charged the jury that the measure of damages was the value of the ice at the time of the conversion in Palmyra in March, 1886; that if it was then worthless the plaintiff could only recover nominal damages; that if it thereafter increased in value the plaintiff was not entitled to any benefit by reason of such increase. The admission of testimony as to the quality and value of ice for the previous season is too remote and insignificant to be regarded as reversible error. The charge of the court covered all phases of the case, and fairly presented to the jury all the controverted issues of fact, and the verdict in favor of the plaintiff is sustained by the evidence. The other questions discussed by counsel have either been covered by what has already been said, or, in effect, determined on the former appeal.

*By the Court.*— The judgment of the circuit court is affirmed.