## THE STATE *versus* SAMUEL CURRIER.

Where the defendant was indicted for " keeping a bowling alley, which was then and there resorted to for the purpose of gaming," under Rev. St. c. 35, § 7, an instruction from the Judge to the jury, " that if they should find, that the defendant owned and had control of a place resorted to for the purpose of gaming, their verdict should be for the government," the testimony to which the instructions were applied not appearing, is incorrect, and cannot be supported.

CURRIER was indicted in the District Court under the statute to prevent gaming, Rev. St. c. 35, § 7. The indictment alleged that Currier, during a certain time, " kept a bowling alley which was then and there resorted to for the purpose of gaming, against the peace of said State and contrary to the form of the statute in such case made and provided."

REDINGTON J. instructed the jury, that if they should find, that the defendant owned and had the control of a place resorted to for the purpose of gaming, their verdict should be for the government.

The verdict was against Currier, and he filed exceptions.

None of the facts or testimony in the case appear in the bill of exceptions.

*II. W. Paine* argued for Currier, contending :

That it is a familiar principle of law, that to charge a man criminally a guilty intent should be proved ; and that when the statute creates an offence and does not expressly require proof of *malum animum*, the Court will nevertheless hold it essential.  16 Mass. R. 393 ; 1 Pick. 465.

From a fair construction of the section under which this indictment was drawn, it is manifest that the makers must have intended that the owner should have knowledge that the house under his control was resorted to for the purpose of gaming.  A clerk or a lodger might have so conducted, that the building should be resorted to for that purpose without his knowledge, or assent.  Had the fact come to his knowledge it would have been prevented.

The peculiar phraseology, in using the language, " agent of

a corporation," shows that the construction here contended for is the true one.

This construction, too, is confirmed by a reference to the succeeding section, where the language used is, " or permit any person to play at cards," &c. To permit a thing to be done, implies the power to prevent it.

The instructions of the Judge were such, that the jury had but two facts to find, to return a verdict of guilty, one that the accused owned and had the control of the building, and the other, that it was resorted to for the purpose of gaming. They should have been instructed, that they must also find, that it was done with his permission or knowledge.

*Bridges,* Attorney General, for the State, contended, that as the defendant had the control of the house he knew or should have known what was ordinarily done there, and for what purposes people resorted thither. He could not have had the control of the building without knowing the purposes for which it was used. He should see that gaming is not commonly carried on in his house, over which he has the control, or he will be liable.

The jury are the judges of the law and the fact in all criminal matters, and their finding is conclusive. The Court did wrong in instructing as to what their duty was, and the jury might well disregard it. It is to be presumed, that they decided the law correctly, and found all the necessary facts.

The instruction however was right. It has been decided, that a retailer is liable, when strong liquors are sold in his store by a clerk, and the principle is equally applicable here.

The opinion of the Court was drawn up by

SHEPLEY J. — The indictment is made a part of the case. It contains two counts and in each the only offence set forth is that the defendant " kept a bowling alley, which was then and there resorted to for the purpose of gaming." The statute, c. 35, § 7, has provided for the punishment of two distinct offences. One for keeping a house, shop or other place, resorted to for the purpose of gaming; and the other for per-

State *v.* Currier.

mitting a person to play at cards, dice, billiards, or other game for money or other things in any house, shop or place, under his control or care. A person may permit one to play at such games for money in a place under his control, and yet not keep a house or place resorted to for that purpose. So one may own and control a house or place resorted to for the purpose of gaming without being the keeper of the house or place in the sense of the law. For example, the owner of a house may take a lodger into an apartment, over which he continues to have the control, and such lodger may without his knowledge allow it to be resorted to for the purpose of gaming, and yet the owner, who has the control of such apartment and may displace the lodger at any moment, cannot be considered as the keeper of a place resorted to for the purpose of gaming. The owner of a house could not be considered as losing the control of it, if he should be absent from it for a few days, and another person without his consent should go into it, and occupy an apartment and allow others to resort to it with him for the purpose of gaming; and yet he could not be considered as the keeper of a house or place resorted to for the purpose of gaming. The bill of exceptions states, that "the Judge instructed the jury, that if they should find, that the defendant owned and had control of a place resorted to for the purpose of gaming, their verdict should be for the government." The testimony, to which these instructions were applied, is not stated; and the proposition contained in the instructions must be true under all circumstances, or it cannot be supported.

*Exceptions sustained, a new trial granted,*
*and the case remanded to the District*
*Court for further proceedings.*