## PADGETT ET AL. *v.* THE STATE.

CRIMINAL LAW.—*Keeping Gaming House.*—*Indictment.*—An indictment charged that, at, etc., on a certain day " and on divers other days between said day " and the returning of the indictment, the defendant " did then and there unlawfully keep a certain building, arbor, booth, shed and tenement, to be used for gaming, and then and there unlawfully suffered" certain persons named and others unknown " to play at a certain game of cards called ' poker,' for money and other articles of value."

*Held,* that the indictment is sufficient.

SAME.—*Evidence.*—*Gaming on Defendant's Premises, without his Knowledge.*—A conviction in such case will not be sustained on proof that gaming was carried on by third persons, on the premises of the defendant, without his knowledge.

From the Sullivan Circuit Court.

*W. Martyn* and *A. J. Padgett,* for appellants.

*T. W. Woollen,* Attorney General, for the State.

NIBLACK, J.—This was a prosecution for keeping a gaming house. The substantial part of the indictment was as follows :

"The grand jury of Sullivan county, in the State of Indiana,   *    *    *    *    *    on their oath, present that one Joseph Norman and one Charles Padgett, late of said county, on the 24th day of January, A. D. 1879, and on divers other days between said day and the day of making this presentment, at said county and State aforesaid, did then and there unlawfully keep a certain building, arbor, booth, shed and tenement, to be used for gaming, and then and there unlawfully suffered Stephen D. Price, Elias Crance, Stephen Dooley and divers other persons to the grand jurors unknown, to play at a certain game of cards called 'poker,' for money and other articles of value."

The defendants moved to quash the indictment, but their motion was not sustained. A jury found them guilty as charged, and assessed a fine against them in the sum of

Padgett *et al. v.* The State.

fifty dollars.   After  overruling a motion for  a new  trial, the court rendered judgment against the  defendants, upon the verdict.  Errors are assigned upon the  overruling of the motion  to  quash the  indictment,  and  upon  the  refusal of the court to grant a new trial.

The sufficiency of the indictment is, we think, fully sustained  by  the  case of *Crawford*  v.  *The  State*, 33 Ind. 304. We, therefore, see no error in the  refusal of the  court to quash the indictment.

Upon  the trial, Stephen D. Price  testified, on behalf of the State, "that he  had played poker for  money with  one Elias Crance and one Stephen Dooley, in an up-stairs room over the  saloon of  said defendant," within two years previous to the time of  the trial ; that "the  room  was over the  billiard room, and is used for a  bedroom and  wardrobe ;" that "there was  but one table in  the room ;" that "Stephen Dooley went up  there to write a  letter, and  I followed him up there ;  then Crance came up ;  don't think defendants saw me  go up.  The table  had  books and stationery on it when we went up there ;  we took  them off ;" that "there was but  one or  two chairs in that  room ; we used two old lemon boxes to  sit  on  to  play ; we had our own cards to play with ;  there were no  cards on or  about the table we  played on ;  we did not ask  permission of  the defendants to go up there to play that  time ;  I have  asked permission to go up  there to play, but have  always  been refused."

Elias Crance testified, "that he had  played poker there with  Stephen D. Price  and Stephen Dooley ; that he had played  for  money ; that he had  played  poker  there  for money within the last two  years, as much as  a half dozen times ;"  that "I did not get permission from any one to go up there ;  I kept my clothes there, part of  the  time, and had a  key to  go and  come when I pleased ;" that "some

of the players furnished the cards; I clerked some for defendants; they often refused to allow any gambling about their house; I never knew them to give permission."

Stephen Dooley, in his testimony, said: "Never got permission to go up there to play cards, the times when I played with Crance and Price; I went up there under pretence to write a letter. I have asked permission to play there, but was always refused."

One F. M. Davison was also a witness on behalf of the State, and testified to having once played cards for money, in the room referred to by the other witnesses, and said: "Did not get permission of the defendants to go up there: I went to the door at the top of the stairs; I knocked, and Elias Crance let me in. * * * Don't know that the defendants knew we were playing."

One Johnson, another witness for the State, on his cross-examination, said: " I am acquainted with the location of the rooms in said building. The first room we go in is a billiard-room. There is one door in the center of the west wall of this room, which leads into the bar-room. There is a stairway situated in the south corner of the billiard-room, which leads up to the room where they were playing cards. There is one door in the south end of the billiard-room; also one door in the south-east end. A person behind the bar in the bar-room could not see a person go up stairs. I have often heard defendants refuse to allow any gambling in their saloon or about the premises."

The above embraces substantially, and almost literally, all the evidence given by the State, touching the supposed knowledge of the defendants of the gaming testified to by the several witnesses introduced by the State.

In a case like this, the fact that the defendant kept or suffered his house to be used for gaming may be proved by circumstances, but the proof must at least show that

he had knowledge that his house was resorted to for gaming. *The State* v. *Currier,* 23 Me. 43; *The State* v. *Cooster,* 10 Iowa, 453; Moore Crim. Law, sec. 808.

. In this case, the evidence, as we construe it, did not either show or fairly tend to show, that the defendants had any knowledge of the gaming testified to by the witnesses on the part of the State. Nor was this failure of proof in any manner supplied by the testimony given on behalf of the defendants.

All the circumstances would seem to indicate that the room referred to by the witnesses had not been especially kept for gaming purposes, and we see nothing in the evidence from which the assent of the defendants to the gaming charged could have been reasonably implied. We are, therefore, of the opinion that the court below erred in overruling the defendants' motion for a new trial.

The judgment is reversed, and the cause is remanded for a new trial.