## THE STATE v. WESLEY ACKERMAN.

Argued June 14, 1898—Decided November 7, 1898.

1. In the act approved April 26th, 1894 (*Gen. Stat.*, p. 1102), the words "if any person * * * shall keep a place to which persons may resort * * * for betting upon the event of any horse-race * * * or for gambling in any form," import the keeping of a place *with intent* that persons may resort thither for betting, &c.

2. The common law form of an indictment for keeping a disorderly house, charging that the defendant permitted persons to be and remain in his house betting on horse-races, does not legally charge a violation of the statute above mentioned.

3. A servant charged with participating in the keeping of his master's disorderly house, may put in evidence representations made to him by his master respecting the nature of the business carried on by the master in the house, by which representations the servant claims he was led to believe that the business was lawful.

4. No state of proof, short of a substantial admission by the defendant of all the facts essential to guilt, will justify the court in refusing to charge the jury in a criminal case that the defendant should not be convicted unless the jury believed that he was guilty beyond a reasonable doubt.

5. On error the court cannot legally look into a so-called ·transcript of testimony, unless it be embraced in the bill of exceptions or otherwise authenticated by the trial court.

On writ of error to the Passaic Quarter Sessions.

Before Justices DIXON, LUDLOW and COLLINS.

For the state, *Eugene Emley*, prosecutor of the pleas.

For the defendant, *John W. Harding*.

The opinion of the court was delivered by

DIXON, J. This case is brought here from the Passaic Quarter Sessions by writ of error, without such a certificate as, under the act of May 9th, 1894 (*Gen. Stat.*, p. 1154), authorizes and requires the court to consider the entire proceedings taken at the trial. *Ryan* v. *State*, 31 *Vroom* 552.

The paper-book in which the case is presented is of a somewhat unusual character. It contains, first, the writ of error, with the legal record of the judgment of the Sessions annexed; second, what is said to be a transcript of the testimony taken at the trial, without any authentication by the court; third, a bill of exceptions duly sealed by the judge of the Sessions, in no way referring to the "transcript of testimony," but complete in itself; and fourth, the assignments

of error, based upon the record of the judgment and the bill of exceptions.

Under these circumstances the transcript of testimony forms no part of the case before us and cannot be considered. *Acker* v. *State*, 23 *Vroom* 259.

The indictment contained in the record is in the form usual at common law for the offence of keeping a disorderly house. By section 192 of the Crimes act, in *Gen. Stat., p.* 1046, such an offence is declared to be a misdemeanor punishable by imprisonment not exceeding two years or fine not exceeding $500, or both. The judgment in this case sentenced the defendant to pay a fine of $1,000 and to be imprisoned for one year. Evidently, this judgment was not warranted by the statute just mentioned.

It is, however, claimed to be authorized by an act approved April 26th, 1894 (*Gen. Stat., p.* 1102), which enacts " that if any person * * * shall keep a place to which persons may resort * * * for betting upon the event of any horse-race * * * or for gambling in any form," such person, on conviction, shall be punished by a fine of not less than $1,000 nor more than $5,000, and by imprisonment for not less than one year nor more than five years.

The indictment charges the defendant with keeping a disorderly house, causing persons of evil fame to frequent the house, and permitting them to be and remain there, drinking, tippling, fighting, cursing, swearing, gaming, betting on horse-races and misbehaving themselves, to the common nuisance, &c.

We think this indictment does not properly charge a violation of the act of 1894. Applying to that act the strict interpretation which statutes defining crimes should receive, its words, " if any person shall keep a place to which persons may resort for betting," do not import the keeping of a place to which it is *possible* for persons to resort for betting, nor the keeping of a place to which persons *do in fact* resort for betting. Their fair import is the keeping of a place with *the intent* that persons shall resort thither for betting. This

intent of the keeper is essential to guilt. But in the common law offence of keeping a disorderly house, the intent of the keeper is not essential. The fact that he keeps a house which, to his knowledge, is rendered disorderly by the conduct of those whom he permits to frequent it, is the gist of the misdemeanor and will constitute guilt, whatever his intent may be. This, and only this, is the charge of the present indictment. No doubt proof of the charge in this indictment with respect to betting upon horse-races would be evidence of the defendant's guilt under the act of 1894, but the ultimate aim of the proof, under the indictment, would be the knowledge and permission of the defendant, while under the act it must reach beyond, to his intent, which might or might not be inferred from his knowledge and permission.

Entertaining this view of the statute, we must conclude that the sentence is illegal.

If this were the only error we might, perhaps, under section 144 of the Criminal Procedure act of 1898 (*Pamph. L.,* p. 866), remand the case to the Sessions for a legal judgment on the conviction.

But we find other errors disclosed by the bill of exceptions, one of which is presented by the following extract from the bill:

"Thereupon the evidence to maintain the said issue on the part of the said state was produced, and also evidence in behalf of the said defendant was offered, under which it was claimed that, during all the period mentioned in said indictment, and during which it was therein alleged that said defendant, Ackerman, kept and maintained said house named in said indictment, the said house was under the direct management and control of one John Garrabrant, who was the proprietor thereof, and that the defendant, Ackerman, was merely employed by said John Garrabrant as a servant or employe under wages; that said defendant did not have any part in the management or control of the place; that he never did anything in said place except under the immediate directions of said Garrabrant, who was always present and told

said defendant directly what to do, and that defendant, in so doing, only obeyed said Garrabrant; that said Garrabrant told said defendant, before said defendant went to work for said Garrabrant, and while so working for him, the nature of the business which said Garrabrant carried on, from which said defendant believed that said business carried on by said Garrabrant, being the alleged act which constituted said house disorderly, was not unlawful. And thereupon the counsel for said defendant asked said defendant what said Garrabrant had told said defendant was the nature of his, said Garrabrant's, business, which led said defendant to believe said business was lawful; whereupon the said prosecutor interposed an objection and insisted that the said question and evidence so offered to be given by said defendant was not good or admissible in law upon the issue aforesaid, and his Honor, the said judge, held and affirmed that said evidence so offered was not admissible in law; and the said defendant was not allowed to answer said question, which was overruled by the judge, who ruled that said defendant would be permitted to be asked by his counsel whether he, defendant, continued there during the time that he remained under representation from said Garrabrant, which he believed to be true, that said business was a legal business, to which ruling of his Honor, the said judge, the defendant prayed a bill of exception, and his Honor, the said judge, sealed the exception accordingly."

The court appears here to have ruled in substance that if a master keeps a disorderly house and employs therein a servant to whom he makes representations as to the nature of the business carried on in the house, and the servant is led by those representations to believe that the business is lawful, the servant cannot, when indicted for keeping the disorderly house, offer those representations as evidence in his defence.

This proposition we deem erroneous in law.

The question on such an indictment would be, we think, whether the servant participated in the keeping of the house, with knowledge of such facts as, under the legal presumption

that he knew the law, apprised him that the house was disorderly. One of the facts entering into his knowledge might be the representations of his master. Thus, a house of prostitution might be represented by the master to his servant as a lawful lodging-house, and if there came to the knowledge of the servant no facts inconsistent with this representation, and he believed it, his defence would be established. Of course, the representations of the master might disclose facts which, under the legal presumption just mentioned, would charge the servant with knowledge of the disorderly character of the house, or, outside of those representations, the servant might be informed of such facts, or the representations themselves might be of mere opinions as to the law, in any of which cases they would not exonerate the servant. But these considerations go rather to the effect and weight of the representations than to their admissibility as evidence. As the bill of exceptions in this case does not show the nature of the representations beyond this, that they led the servant to believe the business to be lawful, and as the other testimony in the case is not legally before us, we cannot say that the rejection of the offered evidence was not injurious to the defendant on the merits.

The same point appears to have been presented to the trial judge in the requests to charge which were not complied with, but it need not be further discussed. It is proper to add that the charge of the judge to the jury, as set out in the bill of exceptions, indicates that his rulings on this subject were induced by his 'opinion that the testimony in the case established beyond controversy the inculpatory knowledge of the defendant, but owing to the form of the case on error we cannot be legally assured of the correctness of that opinion.

Another error should be noticed.

The defendant requested a charge that he could not be convicted unless the jury believed that he was guilty beyond a reasonable doubt. This was not given.

We can conceive of no state of proof, short of a substantial admission by the defendant of all the facts essential to guilt,

which would justify the withholding of such a charge. Whether, in this case, there was such an admission, the bill of exceptions does not show.

Let the judgment be reversed and the record be remitted to the Passaic Quarter Sessions for a new trial.