DUNN, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 23—May 8, 1903.*

*Criminal law: Homicide: Failure of accused to testify: Improper remarks of counsel: Error cured by subsequent charge.*

1. At the close of the testimony on the trial of one charged with murder, the district attorney in his argument to the jury was permitted to say: "If one of the jurymen were arrested on a charge at this time he could at least show himself—*he himself could show* the circumstances surrounding the affair, and not depend upon friends or relatives to get him out of the difficulty." One defense relied on was an *alibi*, but the accused did not take the stand as a witness on his own behalf. Upon objection being made to the remarks quoted, the district attorney explained that he made them in reply to an illustration used by the attorney for the accused in his opening statement, wherein was said: "If one of these jurors, at a certain time when they were sitting here in the jury box, was accused of a crime, that the defense would be an *alibi*, and the only defense." *Held*, that the remarks of the district attorney were improper and without justification, and left the jury to infer that the *accused* could himself alone, by taking the stand and testifying, have shown the circumstances without depending upon friends to do so for him.

2. In such case, although the failure of the court to condemn the objectionable remarks was error, it was cured by an instruction given in the general charge, that: "The statutes of our state provide *and you are so instructed*, that in all criminal actions and proceedings the party charged shall, at his own request, but not otherwise, be a competent witness, but his refusal or omission to testify shall create no presumption against him," and further, that, "The argument of counsel is only for the purpose of aiding you to reach a proper verdict in the case, by refreshing in your minds the evidence . . . and by showing the law applicable thereto, *but, whatever counsel may say*, you will bear in mind that you are to decide the questions at issue free from bias, prejudice, or sympathy; that it is your duty to be governed in your deliberations by the evidence, . . . and the law as given by the court in these instructions."

ERROR to review a judgment of the municipal court of Milwaukee county: A. C. BRAZEE, Judge. · *Affirmed.*

The plaintiff in error was arrested in Milwaukee April 1, 1899. The information charged him and one Frank Foley— *alias* Kid Foley—with having on October 3, 1898, willfully, feloniously, and of their malice aforethought, killed and murdered one Emil Lieber, contrary to the statute in such case made and provided, and against the peace and dignity of the state of Wisconsin. Upon being arrested and arraigned in the municipal court for Milwaukee county, and the information being read to him, he pleaded "Not guilty." The cause having been tried, the jury at the close of the trial, January 30, 1900, returned a verdict wherein they found the plaintiff in error "guilty of murder in the first degree." Thereupon the court adjudged and sentenced the plaintiff in error, *Henry Dunn,* to "be punished by confinement at hard labor in the state prison . . . at Waupun for and during the full term and period" of his natural life. To reverse that judgment, this writ of error is sued out.

It appears that Emil Lieber was at the time of the alleged homicide forty-three years of age, and had a wife and four children, the eldest of which was fifteen years of age, and the youngest three years of age, and that he and his family lived in and conducted a saloon located in the town of Lake, in Milwaukee county, and about four blocks from the southerly limits of the city. He was a carpenter by trade, and in his absence during the daytime his wife conducted the saloon business, but he was in the habit of remaining at home from about seven o'clock in the evening to about six in the morning. It is claimed on the part of the state that, about nine o'clock of the evening in question, two men entered the saloon, one of whom was tall, light-complexioned, and fairly well dressed, and the other much smaller, and squatty in stature and swarthy in appearance, and after taking a number of drinks they both jumped up and said, "Hands up;" that Mrs. Lieber thereupon threw a beer bottle at them, when they immediately began firing their revolvers, and the husband was

shot and killed by the taller one of them. On the trial Mrs.
Lieber was a witness on the part of the state, and identified
the plaintiff in error as the man who shot and killed her
husband. The plaintiff in error was at the time of the homi-
cide employed as a brakeman on a freight train of the Chi-
cago, Milwaukee & St. Paul Railway, running between Mil-
waukee and La Crosse. No witness was produced on the trial
who knew the plaintiff in error prior to October 3, 1898, who
gave testimony tending to prove that the plaintiff in error
was seen either at or about the place of the commission of
the crime on that night or at any other time. *The whole
question of the guilt or innocence of the plaintiff in error
turned upon the matter of identity.* Upon this point the evi-
dence on the part of the state tended to prove: That the re-
volver which was found in *Dunn's* satchel at Portage a month
later was the identical revolver which Mrs. Lieber saw in the
hands of the tall man who shot her husband in the excitement
and confusion of October 3, 1898. That the bullets taken
from the body of the deceased at the post mortem were thirty-
two and thirty-eight caliber bullets. That *Dunn* was in the
city of Milwaukee on the night of the murder. That on the
evening in question, at about six o'clock, a small-sized man—
dark complexion—appeared at the livery barn of one Fahsel,
in Milwaukee, and hired a horse and covered carriage for the
purpose, as he stated, of taking his sister, who was sick, out
for a ride. That later in the evening a taller man appeared
at the same livery barn, and went into that department where
the horses were kept. From there he went out into the street
some distance, and remained standing on the side of the street,
or in an alley. That shortly thereafter the smaller-sized man
returned to the livery barn, secured a horse and buggy, and
drove down the street until he came to where the taller man
was standing, when the taller man got into the buggy, and
they drove off in the direction of the saloon mentioned. That
at the time of the shooting a horse hitched to a top buggy was

tied in the vicinity of the saloon. That after the shooting two men were seen to unhitch the horse and drive away, and after ten o'clock it was claimed that the horse and buggy were driven past the livery stable, with but one man occupying the buggy. The horse was not returned to the livery barn, but was found somewhere out in Waukesha county three or four days thereafter. That for a few days prior to October 3, 1898, and the next day thereafter, the plaintiff in error was associating with a low, thickset, dark-complexioned man. That he was seen in company with such person at La Crosse, and requested the conductor to convey him to the city of Milwaukee on the freight train. That at *Dunn's* request he was carried from La Crosse to Milwaukee on the freight train, and on its return trip was taken back to La Crosse. That prior to the evening in question *Dunn* was associating with a low, dark-complexioned, thickset man at Portage, and that he was seen with the same person at Portage on the night of October 4, 1898. That after the homicide *Dunn* frequently referred to it, and the account of it given in the papers. That the next day after the homicide *Dunn* showed one of the witnesses two revolvers, and told her that his partner shot Lieber. That in commenting upon the account in the papers, which stated that the deceased's wife threw a beer bottle, *Dunn* stated to the witness that Lieber would not have been shot if his wife had not interfered.

For the plaintiff in error there was a brief by *O'Connor, Schmitz & Wild,* and oral argument by *J. L. O'Connor* and *J. B. Doe.*

For the defendant in error there was a brief by *A. C. Umbreit,* of counsel, a supplemental brief by the *Attorney General* and *Walter D. Corrigan,* second assistant attorney general, and oral argument by *Mr. Corrigan.*

CASSODAY, C. J. It is conceded that Emil Lieber was murdered by somebody at the time and place mentioned in the

testimony.   On being arraigned, the plaintiff in error pleaded "Not guilty;" and, in the language of the trial court in charging the jury, he "interposed as a defense what is known in law as an *'alibi;'* that is, that he was at the time of the killing of Lieber at another and different place than that in which the crime was committed, and therefore was not and could not have been the person, or one of the persons, who committed the same." In the same connection the court charged the jury that "such defense is as proper and legitimate as any other, and the defendant is not required to prove that defense beyond a reasonable doubt to entitle him to an acquittal." The whole question of the guilt or innocence of the plaintiff in error turned upon the matter of his identity. With the exception of the testimony of Mrs. Lieber, mentioned, the evidence is entirely circumstantial. It is conceded on behalf of the accused "that if the jury disbelieved the testimony of the defense, and believed the testimony of the state, they would be warranted in finding a verdict of murder in the first degree." But the same counsel insist, as they have a right to insist, "that, no matter how enormous the crime, or the brutality with which it was perpetrated, any citizen charged therewith is entitled to a fair and impartial trial according to the rules of law and evidence." The only error relied upon for a reversal is in permitting the state's attorney, in his argument to the jury at the close of the testimony, to say "that, if one of the jurymen were arrested on a charge at this time, he could at least show himself—*he himself could show* the circumstances surrounding the affair, and not depend upon friends or relatives to get him out of the difficulty"—or to say that in substance. Upon exception being taken to such remarks, the state's attorney attempted to justify the same by claiming that in making such remarks he was simply referring to and commenting upon an illustration used by counsel for the accused in his opening statement, wherein he said:

"If one of these jurors, at a certain time when they were sitting here in the jury box, were accused of a crime, that the defense would be an *alibi* and the only defense."

The court verified that as being the statement made by counsel for the accused, and thereupon the state's attorney stated that, in replying to and commenting upon that statement, he had argued that "if that was true—if that would have been and could have been the only defense—at least they could explain the circumstances surrounding the act, and not rely upon others to explain *where they were* or what they had done at that time." To those remarks counsel for the accused excepted. Thereupon the court stated that counsel for the state had simply made a reply to a statement made by counsel for the accused, and when counsel for the accused remonstrated he was told by the court to go on; that he would have the benefit of an exception. The defense was an *alibi*. The accused did not take the stand as a witness in his own behalf, as he had a legal right to do under the statute (sec. 4071, Stats. 1898). But that statute declares that "his refusal or omission to testify shall create no presumption against him." The remarks of the state's attorney, above quoted, and to which exceptions were taken, left the jury to infer that the accused could himself, alone, by taking the stand as a witness in his own behalf, have shown "the circumstances surrounding the affair, and not depend on friends or relatives to get him out of the difficulty." It was not justified by what was so said by counsel for the accused. Comment to the jury by the district attorney upon the fact that a person on trial for crime "did not offer himself as a witness in his own behalf" has been characterized by this court as a "gross impropriety." *Martin v. State,* 79 Wis. 165, 175, 48 N. W. 119, 122. For counsel to abuse his privilege has frequently been condemned in civil cases. *Andrews v. C., M. & St. P. Ry. Co.* 96 Wis. 348, 361, 362, 71 N. W. 372; *MacCarthy v. Whitcomb,* 110 Wis. 124, 85 N. W. 707, and cases there

cited.   Under a similar statute, the supreme court of the
United States has strongly condemned such comments.   *Wil-
son v. U. S.* 149 U. S. 60, 66, 67, 69, 70, 13 Sup. Ct. 765.
In that case Mr. Justice FIELD, speaking for the whole court,
among other things, said:

"It is not every one who can safely venture on the witness
stand, though entirely innocent of the charge against him.
. . .   Counsel is forbidden by the statute to make any com-
ment which would create or tend to create a presumption
against the defendant from his failure to testify."

Quoting approvingly from another case, it is there said:

"When the statute says that no presumption against the
accused shall be created by his neglect to testify, it clearly
meant that, in cases where the defendant should not choose to
avail himself of the privilege offered by the statute, the
trial should be conducted in  the same manner and upon
the same presumptions as if the statute had not been passed."
See, also, *Hall v. U. S.* 150 U. S. 76, 81, 82, 14 Sup. Ct. 22.

In the case at bar the trial judge, when his attention
was called to the remarks, should have promptly condemned
them.   But with some hesitation, we are constrained to hold
that such error, in view of the charge of the court which fol-
lowed, should not work a reversal in this case.   The court
charged the jury:

"The statutes of our state provide, *and you are so in-
structed,* that 'in all criminal actions and proceedings the
party charged shall, at his own request, but not otherwise, be
a competent witness, but his refusal or omission to testify
shall create no presumption against him or any other party
thereto.' "

The court then added:

"The argument of counsel is only for the purpose of aiding
you to reach a proper verdict in the case, by refreshing in
your minds the evidence which has been given to you in this
cause, and by showing the application of the law thereto; *but,
whatever counsel may say,* you will bear in mind that you are
to decide the questions at issue free from bias, prejudice, or

sympathy; that it is your duty to be governed in your deliberations by the evidence as you understand it and remember it to be, and by the law as given by the court in these instructions, and render such verdict as in your conscience and reason and candid judgment seems to be just and proper."

Thus at the very close of the trial the jury were "instructed" that the "omission" of the accused to testify should "create no presumption against him;" that the argument of counsel was only to aid them by refreshing in their minds the evidence, and showing the application of the law; and that they were to decide the questions at issue according to the evidence, and the law as given to them by the court, free from bias, prejudice, or sympathy, and regardless of the remarks of counsel. Such charge, we are forced to believe, was sufficient to do away with the inference which the jury might otherwise have drawn from the remarks of the state's attorney to which exception was taken. There is no claim of any other error calling for consideration.

*By the Court.*—The judgment of the municipal court of Milwaukee county is affirmed.