HAFFNER and wife, Plaintiffs in error, vs. THE STATE, Defendant in error.

*February 11—March 14, 1922.*

*Keeping house of ill fame: Evidence: Sufficiency: Question for jury: Presumption: Coercion of wife by husband: Comment by counsel upon defendant's failure to testify: Discretion of court as to argument: Proof of sale of liquor in house: Knowledge of defendant: Necessity of actual knowledge: Circumstantial evidence: Harmless error.*

1. In a prosecution of husband and wife for keeping a house of ill fame, the evidence is *held* sufficient to authorize the submission to the jury of the issues as to whether the wife was one of the keepers of the house or participated actively in its management and had knowledge of the unlawful use of the premises.

2. The presumption that what a wife does in her husband's presence she does because of his coercion is inapplicable in such a prosecution.

3. The question whether defendants received money paid a waiter by visitors for the use of rooms is for the jury.

4. Statements of the district attorney that there were some things that half the members of the firm might have explained but did not, and that the husband testified as to what he knew but that he could not tell what somebody else knew, were improper, and, if unexcused, were in violation of sec. 4071, Stats., providing that defendant's refusal or omission to testify shall create no presumption against him, though defend-

ant did not call his bartender to testify, as the jury may have believed that the remarks referred in part to the defendant wife.

5. Where it is fairly inferable from the statements of counsel for the state, to which objection was made as commenting on defendant's failure to testify, that defendants' counsel had discussed the nonproduction of witnesses by the state, it will not be presumed that the trial court, whose discretion in such matters is wide, erred in permitting such statements, though the record did not disclose what statements had been made by defendants' counsel.

6. Where there was ample proof of immoral practices in defendants' house, proof of the sale of liquor to visitors was admissible and not prejudicial, such sale not being an independent offense disconnected with the offense charged.

7. One cannot be convicted of keeping a house of ill fame under sec. 4589, Stats., without knowledge of the unlawful conduct of visitors, but such knowledge may be proved by circumstantial evidence.

8. A conviction of keeping a house of ill fame, where the evidence as to immoral acts by frequenters was clear, and the circumstantial evidence as to the knowledge of the defendants of these acts was such that the jury could hardly have avoided finding such knowledge, will not be reversed because of an erroneous instruction that to convict it was sufficient if the keeper of the house, as a person of ordinary prudence and caution, ought to have known that the house was being used for unlawful purposes, as this court, after an examination of the entire proceeding under sec. 3072m, is convinced that defendants' substantial rights were not prejudiced.

Error to review a judgment of the municipal court of Milwaukee county: Martin L. Lueck, Acting Judge. *Affirmed.*

The plaintiffs in error, hereinafter called the defendants, were found guilty of the charge of "keeping a house of ill fame" under sec. 4589, Stats., and sentenced to serve two years in the house of correction of Milwaukee county.

The house in question is situated just outside the limits of the city of Milwaukee. The premises consist of a dwelling house, in the front of which, to the east, is a dance hall; and in the rear of this dance hall are two small rooms, a

toilet and kitchen. There is free access from the dance hall into these two small private rooms, the place where the acts on which the information is based are alleged to have taken place. The furnishings of each of these two rooms consist of two chairs, a table, lamp, and carpet. The upper story of the house is used as living quarters by the defendants.

The state produced several women who testified that their business was prostitution; that they had on various occasions, with different men, come to the Rock Top Inn; that the place was also known as "Diamond Minnie's;" that they had been served with whisky; that they had seen defendant *Mary Haffner* and had talked with her; that the waiter, upon receipt of a dollar, had ushered them into one of the private rooms; that they had used these rooms for immoral purposes; and that they had come to the Rock Top Inn because it was known as a place where such practices were carried on.

Other witnesses for the state testified that the place was popularly known as "Diamond Minnie's;" that the front and back doors were always kept locked; and it was proved that defendant *John Haffner*, some time before, had been convicted of a similar offense.

Defendants testified that the place was' a road-house, specializing in the serving of chicken dinners; that it was frequented by people of good reputation; that *Mary Haffner* had charge of the kitchen only; that neither the house as a whole, nor the rooms in particular, were fitted for the purpose charged in the information; that they had never seen any lewd actions there; and that if the rooms were used for immoral practices, the acts were done without their knowledge. Other facts are stated in the opinion.

For the plaintiffs in error there was a brief signed by *W. B. Rubin* of Milwaukee, of counsel, and oral argument by *Mr. Rubin.*

For the defendant in error there was a brief by the *At-*

*torney General, Winfred C. Zabel,* district attorney of Milwaukee county, and *George A. Shaughnessy* and *Eugene Wengert,* assistant district attorneys, and oral argument by *Mr. Zabel* and *Mr. Shaughnessy.*

Jones, J. On this appeal counsel for defendants ask that the case be reversed with direction to dismiss the complaint as to defendant *Mary Haffner* and to grant a new trial as to defendant *John Haffner.*

Sec. 4589, Stats., reads in part as follows:

"Any person who shall keep a house of ill fame, resorted to for the purpose of prostitution or lewdness, or who shall set up or keep a common bawdyhouse or brothel, or who shall set up, maintain or operate any place, structure, building or conveyance for the purpose of prostitution, lewdness or assignation, or who shall knowingly lease or let to another any place, conveyance, structure, house or other building or any room in any house or building for the purpose of being used as a house of ill fame, bawdyhouse or brothel or for purposes of prostitution, lewdness or assignation or knowing that it will be so used, or who shall receive, or offer or agree to receive any person into any place, structure, building or conveyance for the purpose of prostitution, lewdness or assignation, or shall permit any person to remain there for such purpose, shall be punished . . ."

The errors assigned are (1) the refusal of the trial court to discharge defendant *John Haffner* at the end of the state's case for want of evidence to submit the case to the jury; (2) the refusal to direct a verdict of "Not guilty" in favor of the same defendant at the end of all the testimony; (3 and 4) the refusal to make the same orders with respect to defendant *Mary Haffner;* (5) the refusal to grant a new trial because the verdict was contrary to the evidence; (6) the overruling of objections to certain remarks to the jury by the district attorney; (7) the admission of evidence relative to the serving of whisky; (8 and 9) the refusal to give requested instructions and the giving of improper ones.

The first two assignments of error present little difficulty, since counsel for defendants did not seriously contend that there was not sufficient evidence as to the guilt of *John Haffner* to take the case to the jury, and since a new trial only is asked as to him.

. As to the third, fourth, and fifth, there was testimony by M—— to the effect that she had used one of the rooms for immoral purposes on twelve different occasions, each time with a different man; that she had seen defendants in the dance hall; and that she came to this place because she knew it could be used for the purposes mentioned. F—— testified that she had come to the place on five different occasions with different men; that she had used the rooms for immoral purposes each time; and that she had seen and talked with defendant *Mary Haffner* in the dance hall. K—— testified that she had been to the house twice; that she had never used the rooms, but that her escort and another girl had; that she had seen and talked with defendant *Mary Haffner* in the dance hall; that previous to the trial this defendant had seen her in Milwaukee, had asked her if she was being held as a witness, and had offered to call on her and assist her. G—— and F——testified that they had used the rooms; that they had been served with drinks; and had seen defendant *Mary Haffner* in the dance hall. E——, witness for the defense, testified that she was a pianist; that she had often played at the Rock Top Inn; that both *Mr.* and *Mrs. Haffner* had charge of the place; and that on some occasions *Mrs. Haffner* was present in the dance hall until five o'clock in the morning. Other witnesses testified that the place was run by *Mr.* and *Mrs. Haffner;* that it was popularly known as "Diamond Minnie's;" and that the front and back doors were always locked.

It may be conceded that the burden was upon the state to prove beyond a reasonable doubt that *Mary Haffner* was one of the keepers of the house or had active participation in its management and control, and also that knowledge of

the unlawful use of the premises is essential under the statute.

In determining these questions the jury had the right to consider the mass of evidence which was received and to draw such inferences as reasonable men under all the circumstances would naturally draw. It was not without significance that the house was known as "Diamond Minnie's" and bore the reputation of being a house of ill fame. The fact that the place bore this reputation was not alone proof of guilt, but was a fact proper to be considered. There was testimony of several witnesses that both defendants were in charge of the premises. The jury were not bound by the assertions of the defendants that they were ignorant of all the shameless immorality which was proved. The jury probably believed from the testimony already detailed that *Mary Haffner* was as likely to know what was transpiring between men and women of bad reputation under the family roof as her husband, and we cannot say that such belief was not justified.

Defendants' counsel rely in part on the presumption that what a wife does in her husband's presence she does because of his coercion. We are not unmindful of this presumption. Blackstone said in his Commentaries, the "doctrine is at least a thousand years old in this kingdom, being found among the laws of King Ina, the West Saxon. And it appears that among the northern nations on the continent, this privilege extended to any woman transgressing in concert with a man, and to any servant that committed a joint offense with a freeman; the male or freeman only was punished, the female or slave dismissed." 4 Blackstone, 28. But at an early date exceptions were engrafted upon this presumption, and one of the exceptions was that it did not apply to keeping a house of ill fame. In 1 Hawkins, Pleas of the Crown (8th ed.) p. 5, it is said: "Also a wife may be indicted together with her husband, and condemned to the pillory with him for keeping a bawdy-house;

for this is an offense as to the government of the house, in which the wife has a principal share; and also such an offense as may generally be presumed to be managed by the intrigues of her sex." *King v. Dixon,* 10 Mod. Rep. 335 (5th ed.). This exception has frequently been declared by the courts of this country. 18 Corp. Jur. 1252, 1262; *State v. Jones,* 53 W. Va. 613, 45 S. E. 916; *People v. Wheeler,* 142 Mich. 212, 105 N. W. 607; *State v. Gill,* 150 Iowa, 210, 129 N. W. 821; *State v. Keithley,* 142 Mo. App. 417, 127 S. W. 406. In other offenses the presumption of the wife's coercion was easily rebuttable at common law. After the enactment of statutes looking to the wife's complete emancipation and equality with her husband before the law, the ancient presumption may not be entirely scrapped, but it certainly will not be strengthened.

Error is assigned because of remarks during the argument of the district attorney which are claimed to be prejudicial. One of the arguments was that defendants received the money paid the waiter by those using the rooms. This was objected to as not based on any evidence. The court held, and we think properly, that under all the circumstances this was for the jury to determine.

Other objections were to the following statements by the district attorney:

"They talk about us not producing witnesses. There are some *things that half of the members of this firm might have explained but did not. John* took the stand as to what he knew—*he can't tell you as to what somebody else knows —he can only speak for himself."* "So you see they talk to you about the state not producing witnesses, they forget that they have failed very signally in respect to producing witnesses that might have proven a great many things. We cannot evade—"

These statements were improper unless explained or excused by other proceedings at the trial. If without excuse they were in violation of sec. 4071, providing that in criminal cases the refusal or omission of a defendant to

testify shall create no presumption against him or any other party to the action.    The defendant had not called as a witness the bartender who had conducted the visitors of the house to the private rooms and received the money from them.    It is argued by counsel for the state that the re-marks above quoted referred to this bartender and not to *Mary Haffner*.    We consider, however, that they may have referred in part to her and that the jury may have so be-lieved.    The excuse chiefly relied on by the state is that the statements were responsive and a proper reply to other arguments made by defendants' counsel.    It may be fairly inferred from the opening sentence in the statements ob-jected to that counsel for defendants had been discussing the nonproduction of a witness or witnesses by the state, and it is asserted in the brief of counsel for the state that this was the fact.    The record does not disclose what state-ments had been made by the district attorney.    The trial judge had heard them and evidently believed that since the door to such discussion had been opened by the counsel for defendants the reply was justified.    In such matters the trial court has a wide discretion, and error is not to be pre-sumed.    *Hoffmann v. State,* 65 Wis. 46, 26 N. W. 110; *Baker v. State,* 69 Wis. 32, 33 N. W. 52.

Another assignment of error is that evidence was re-ceived of the sale of intoxicating liquor on the premises to those using the private rooms.

Defendants' counsel rely on the familar general rule that on a criminal charge other independent offenses cannot be proven.    Counsel cite numerous cases relating to offenses for keeping disorderly houses, but none of them supports the contention now raised that proof may not be given of the sale of liquor to visitors while they are frequenting a house of ill fame.    The only case cited in either brief which is directly in point is *State v. Guyer,* 91 Vt. 290, 100 Atl. 113, which held that such testimony in connection with other evidence tended to show the character of the house.    The

wide range of testimony which may be received in a prose-
cution for keeping a house of ill fame is illustrated by cases
cited in Underhill on Criminal Evidence (2d ed.) § 482.
Where there is ample proof of such immoral practices as
were carried on in defendants' home, we cannot hold that
the sale of liquor was an independent offense disconnected
with the offense charged or that proof of it was prejudicial.

The most serious question in the case, and one which has
been very ably argued by counsel for both parties, arises
out of the giving of the following instruction:

"The offense with which the defendants are charged con-
sists in keeping a house of ill fame resorted to for purposes
of prostitution and lewdness. To render the keeper of a
house guilty of the offense he must have knowledge of the
unlawful purposes of those who resort to it, and must con-
sent to its use for this purpose; *but the knowledge mentioned
need not be that actual and positive knowledge which is
acquired by personal observation of acts of lewdness; it is
sufficient if under all the circumstances established the
keeper of the house as a person of ordinary prudence and
caution* OUGHT TO HAVE KNOWN *that the house was
being used for purposes of prostitution.*"

The court gave the usual and proper instruction as to
burden of proof and reasonable doubt. It is argued by
defendants' counsel that the last part of the instruction
quoted practically informed the jury that they could con-
vict defendants for mere negligence, and they rely on
*Meath v. State,* 174 Wis. 80, 182 N. W. 334, and *State v.
Mausert,* 85 N. J. Law, 498, 89 Atl. 1011, as authority for
a reversal. In some respects these cases are distinguishable
from the one before us. In the *Meath Case* the defendant
was convicted under sec. 4417, Stats., relating to receiving
stolen goods, and the statute expressly makes knowledge an
ingredient of the offense. The offense consisted of a single
transaction, not of a series of acts. The principal evidence
was that of the thief, and knowledge by the defendant was
the very gist of the action. In the New Jersey case above

cited the jury were in effect told that negligence, irrespective of knowledge, would suffice to convict, and the charge was held erroneous.

Although these cases are dissimilar to the one before us, they do hold that in criminal cases of the kind then under consideration it is necessary to prove something more than that the defendants ought to have knowledge of the acts complained of, and this is the general rule.   The proprietor of a house cannot shut his eyes to acts and conduct which clearly show that his place is being used for purposes of prostitution.   But it would be a dangerous rule that the proprietor of a hotel or boarding house could be convicted of the crime of keeping a house of ill fame without knowledge of the conduct of the wrongdoers.   Such a rule would make it necessary to investigate the antecedents of his guests in such a manner as would be wholly impracticable.   Although the knowledge must be shown, it may be proven by circumstantial evidence, and indeed in most cases must generally be so proven; and those circumstances may be so convincing that the knowledge of the persons in control may be found by the jury despite the most positive denials.

It is argued by counsel for the state that the cases which hold that in liquor prosecutions knowledge on the part of defendants of the wrongful acts is not necessary should control this case, and such cases as *Olson v. State,* 143 Wis. 413, 127 N. W. 975, and *Reismier v. State,* 148 Wis. 593, 135 N. W. 153, are cited.   But such prosecutions are under statutes which impose penalties irrespective of motive or intent, and we do not regard them as analogous.

We are therefore compelled to hold that the instruction complained of was erroneous.   The only remaining question is whether giving it was prejudicial within the meaning of the statute, sec. 3072*m*.   This case is distinguished from many others of its class by the fact that it was proven by direct and undisputed evidence that prostitution of the most disgraceful kind was being carried on in the premises which

defendants controlled.   The circumstantial evidence which tended to bring knowledge to the defendants need not be restated or further discussed.   It was of such a character that in our opinion the jury could have hardly avoided coming to the conclusion that defendants had knowledge of the purposes for which the house was being used.   The section above cited forbids us to reverse or set aside the judgment or grant a new trial in this case on the ground of misdirection of the jury unless in our opinion, after examining the entire proceeding, it appears that the error complained of has affected the substantial rights of the defendant.

We are convinced after such examination that the substantial rights of the parties were not affected by the error in the charge.   On the contrary, we believe that the result would have been the same if the correct instruction had been given.   Since we find no prejudicial error, it becomes our duty to affirm the judgment.   *Hack v. State,* 141 Wis. 346, 124 N. W. 492; *Oborn v. State,* 143 Wis. 249, 126 N. W. 737; *Radej v. State,* 152 Wis. 503, 140 N. W. 21.

*By the Court.*—Judgment affirmed.