**UNITED STATES of America,** **Plaintiff-Appellee,**

v.

**Patricia GUZMAN, Defendant-Appellant.**

**No. 26496.**

United States Court of Appeals, Ninth Circuit.

Aug. 9, 1971.

Rehearing Denied Sept. 25, 1971.

1138

Fredrick W. Reinhart, Salinas, Cal., for appellant.

Harry D. Stewart, U. S. Atty., Brian Michaels, Asst. U. S. Atty., San Diego, Cal., for appellee.

Before CHAMBERS and KOELSCH, Circuit Judges, and BYRNE,* District Judge.

BYRNE, District Judge:

On July 29, 1968, at approximately 11:20 P.M., appellant and her twleve year old daughter, Michelle Ann, entered the United States by automobile from Mexico at the San Ysidro, California, Port of Entry. Following routine questioning regarding citizenship ("United States") and purchases made in Mexico ("plaster of paris and glass items"), the Customs Inspector requested appellant to open the trunk. Cursory inspection disclosed "what appeared to be a false compartment." A more thorough inspection of this "compartment" conducted at the secondary inspection area resulted in the discovery of 55 pounds of marihuana and 385,000 amphetamine tablets.

---

* Honorable William M. Byrne, United States District Judge, Central District of California, sitting by designation.

Appellant was charged in a four count indictment with smuggling the marihuana and amphetamine tablets into the United States from Mexico (Counts I and III), violations of 21 U.S.C. § 176a and 18 U.S.C. § 545, respectively, and with facilitating the transportation thereof (Counts II and IV), also respective violations of 21 U.S.C. § 176a and 18 U.S.C. § 545. At a jury trial, appellant was found guilty on all counts.

Appellant initially argues that the verdicts are not supported by substantial evidence. At the core of her position is the following testimony of Customs Agent Aros which was elicited during the government's case in chief:

"Yes. I told her that the daughter also stated they were supposed to meet Carol Wells, Lupe, Alex and Bobby across the line at a service station once inside the United States; and Mrs. Guzman, with this says, *'I told you enough. I refuse to answer any further questions'*, and the interrogation was terminated."

In his opening summation to the jury, the government's counsel referred to appellant's refusal to continue the interrogation and asked, "Why didn't she finish?" During his final summation, the government's counsel again directed the jury's attention to this refusal and inquired, "Are these reasonable, are these things reasonable?" In appellant's view, "absent the damaging comments by prosecution concerning defendant's refusal to testify, the record is strikingly vacant of any evidence to show knowledge." To bolster her contention that the record does not support the jury's verdict, appellant has recapitulated the highlight of her self-serving

testimony which, in effect, portrays her as an innocent, ignorant, pawn of international drug traffickers.[1]

In truth, appellant's contention is yet another attempt to persuade this court that the innocuous act of driving across an international border an automobile later discovered to be a "load car" for contraband is insufficient evidence to support a smuggling conviction. We have repeatedly held that "The discovery of undeclared marihuana in a car crossing the border *establishes the illegal importation.*" Plascencia-Plascencia v. United States, 423 F.2d 803 (9th Cir. 1970); United States v. Teran, 434 F.2d 605 (9th Cir. 1970). The question of the occupant's *knowledge* of the concealed contraband is for the trier of fact to answer, not a court of review. Having answered this question by way of a guilty verdict, it has long been our position that evidence which is the subject of this controversy serves as a substantial basis to draw an inference of such knowledge. United States v. Simon, 424 F.2d 1049 (9th Cir. 1970); Eason v. United States, 281 F.2d 818 (9th Cir. 1960); Evans v. United States, 257 F.2d 121 (9th Cir. 1958), cert. den. 358 U.S. 866, 79 S.Ct. 98, 3 L.Ed.2d 99 (1958), reh. den. 358 U.S. 901, 79 S.Ct. 221, 3 L.Ed.2d 150 (1958). Indeed, this result is all the more palatable in light of the jury having been given the opportunity to consider the exculpatory testimony of appellant. United States v. Zumpano, 436 F.2d 535 (9th Cir. 1970); Plascencia-Plascencia v. United States, 423 F.2d 803 (9th Cir. 1970); Aguilar v. United States, 363 F.2d 379 (9th Cir. 1966), cert. den. 388 U.S. 921, 87 S.Ct. 2119, 18 L.Ed.2d 1369 (1967). In sum, while we

---

1. According to appellant, the sojourn to Tijuana began when her estranged "boy friend" Alfred Nardoni (she had not seen him for six months) agreed to loan her his automobile. "On the spur of the moment" two girl friends, Carol Wells and Lupe (surname not disclosed by the record) decided to join appellant and her daughter. Appellant denied knowledge of a second automobile accompanying her to the border city. In Tijuana, appellant met with Nardoni. She denied seeing one, Bobby Miramon in Tijuana. Appellant returned to the United States without Carol and Lupe because "they wanted to stay and have a good time." Given the lateness of the hour and the age of her daughter, appellant felt compelled to return home. She was unable to speculate how Carol and Lupe returned from Mexico.

do not condone the conduct of the government's counsel, we cannot agree "that the record is strikingly vacant of any evidence to show knowledge."

Appellant also fires a double barreled salvo at the guilty verdicts by asserting that on two occasions she was denied her Fifth Amendment guarantee against self-incrimination. Firstly, appellant maintains that the portion of Agent Aros' testimony detailing her refusal to continue the post-arrest interrogation was violative of the rule that " * * * it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." Miranda v. Arizona, 384 U.S. 436, 468, fn. 37, 86 ·S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966). Secondly, appellant contends that the references to her refusal to continue the interrogation made by the Assistant United States Attorney during his closing summations to the jury was a blatant violation of the tenet that the prosecution may not comment on the defendant's failure to testify. In short, appellant argues that "in light of the insufficiency of the evidence" the government's infringements upon her guarantee against self-incrimination "may well have been the factors influencing the jury to decide as they did."

◼ Appellant's claim that at trial she was not accorded her Fifth Amendment right against self-incrimination is made for the first time on appeal. Because of the belated nature of this assertion, we are bound by the settled principle that barring prejudicial error, an appellant is in no position on review to complain when he made no objection during the trial. Holt v. United States, 272 F.2d 272 (9th Cir. 1959); Az Din v. United States, 232 F.2d 283 (9th Cir. 1956), cert. den. 352 U.S. 827, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956). Finding no such error to have been committed in the instant case, we are persuaded that appellant's tardy objections are subject to the settled principle.

◼ In so ruling, we recognize that error in the form of Agent Aros' testimony and the closing remarks of the government's counsel is a part of the record. United States v. Allsenberrie, 424 F.2d 1209 (7th Cir. 1970); United States v. Sprengel, 103 F.2d 876 (3rd Cir. 1939). Nevertheless, we are satisfied that what error was injected in the trial proceedings was "harmless beyond a reasonable doubt." Appellant was apprehended at the border driving an automobile containing 266 pounds of contraband. Her testimonial profession that she was without any knowledge of the illicit cargo's presence was inferentially refuted by the testimony of her daughter.[2] In light of this evidence, we are satisfied that the three statements in controversy did not influence the jury's decision. United States v. Wick, 416 F.2d 61 (7th Cir. 1969), cert. den. 396 U.S. 961, 90 S.Ct. 430, 24 L.Ed.2d 425 (1969).

The instant situation is in marked contrast with the one present in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). There, the prosecution's closing argument was riddled with references to defendants' failure to testify. Indeed, this failure was an intricate part of the prosecution's argument to the jury. Here, the three *isolated* statements in controversy were more unfortunate than prejudicial. Be-

2. Called as a rebuttal witness for the government, appellant's daughter stated that "Bobby and Alex * * * went down" with them to Tijuana in another automobile. This testimony rebutted appellant's claim that she was unaware of a second automobile accompanying her to Mexico. Also, the daughter's testimony refuted the assertion that she did not meet with a man named "Bobby" in Tijuana. Clearly, the credibility of appellant's assurance to the jury that she was free of any knowledge concerning the contraband secreted in the automobile's "hidden compartment", was severely undermined by the rebuttal testimony.

cause of the substantial evidence supporting the jury's verdict, we can perceive no disquieting effects resulting from appellant's courtroom silence.

Affirmed.