REICHHOFF, Plaintiff in error, v. STATE, Defendant in error.

*No. 75–896–CR. Argued February 2, 1977.—Decided March 15, 1977.*
(Also reported in 251 N. W. 2d 470.)

(Incriminating statement, ordinarily inadmissible because made when a juvenile, admitted for impeachment purposes.)

For the plaintiff in error there were briefs and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

ABRAHAMSON, J.   This matter is before the court by writs of error to review a judgment of conviction entered on July 31, 1975, of two counts of first degree murder and an order denying defendant's post-conviction motions entered on May 26, 1976.

At trial the special prosecutor, over defense counsel's objection, asked Officer White two questions[1] and asked Sheriff Holland three questions,[2] each question relating to the defendant's silence, his failure to profess his innocence or his failure to deny his guilt at the time of arrest. Both witnesses responded to all the questions, indicating that the defendant was silent. The court allowed this testimony overruling defense objection.

The prosecuting attorney, in closing argument, twice attacked the defendant's credibility, commenting on defendant's failure to profess his innocence.[3] The court

[1] "Q. Were you in the defendant's presence when he was placed under arrest? A. Yes, I was.

"Q. What reaction if any did you note in the defendant? A. There was no word spoken, he just put his wrists out like this for the handcuffs and never said a word.

"Q. At and immediately about the time of his arrest did the defendant in your presence make any denial of guilt?

"Mr. David Bennett: We're going to object to that.

"The Court: The objection is overruled. You may answer.

"The Witness: No, sir, there was no questions asked or no statements made as to his guilt."

[2] "Q. At the time you stated to him that you were placing him under arrest, put the handcuffs on him, or for that matter during the time you were removing him from the trailer home to take him in, did he in any way profess his innocence or deny his guilt? A. No.

". . .

"Q. And on the way in from Brooks to the jail, did the defendant attempt to engage you in any conversation concerning the crime? A. No.

"Q. Did he in any way protest his arrest? A. No.

"Q. At the jail when he was in your presence being booked and his clothes and money taken from him, did he attempt to engage in any conversation about the crime at that time? A. No.

"Q. Did he in any way profess his innocence? A. No."

[3] "He's so confused that a short time later when he's arrested by Bill Holland he doesn't say a word, he doesn't profess his innocence, he doesn't say 'I didn't do it' he just holds out his hands to be handcuffed.

viewed the testimony and the comments as proper and did not give any curative instruction.

On appeal the state concedes that the admission of this evidence and the comments of the prosecuting attorney are constitutional error. The questions were manifestly designed to demonstrate a tacit admission of guilt on the part of the defendant. The purpose of the evidence was to allow the jury to draw an inference of defendant's guilt from the defendant's silence. Such an inference of guilt is a direct violation of the defendant's right to remain silent guaranteed by the state constitution[4] and the fourteenth amendment of the federal constitution.

---

"Now, I ask you if that is conduct commensurate with actions of an innocent person, he would at least say 'Who, me?' or 'What did I do?' or 'You've got to be kidding.' If he cooperated all day, 'Why are you arresting me?' 'I don't know where my .22 pistol is.' You weigh that, you weigh that moment of arrest, and you weigh in your mind what you and people you know would do at that moment if you know you're innocent.

". . .

"Now, the defendant's conduct throughout the day, the defendant's conduct in this courtroom, is anything that you have heard from other people on that witness stand consistent with an innocent person's reactions to the predicament he was in on that day? Anything? He's 19 years old, he's among his peers, his friends. There is no conjecture upon what he found or how it happened or what he saw or what he heard or what he did.

"Now, I submit to you on the basis of your common knowledge of every day experiences, is that consistent with an innocent person? The consistency is with a guilty person who doesn't want to open their mouth any more than necessary and put their foot in it. That's what that silence is consistent of, especially at the time of his arrest. As I said before, at least I would have had a questioned look in my eye if I didn't say anything were I in that position."

[4] Art. I, sec. 8 of the Wisconsin Constitution provides that "no person . . . shall be compelled in any criminal case to be a witness against himself."

As early as 1891, this court has condemned efforts by a prosecutor to make use of a defendant's invocation of his constitutional privilege to remain silent at trial.[5] Prior to *Miranda v. Arizona,* 384 U.S. 436, 86 Sup. Ct. 1602, 16 L. Ed.2d 694 (1966), the law in this state was that "evidence concerning the [accused's] failure to respond to a nonaccusatory charge [at the time of apprehension] is not admissible." *Galloway v. State,* 32 Wis.2d 414, 425a, 145 N.W.2d 761, 147 N.W.2d 542 (1966). Subsequent to *Miranda* this court has recognized as constitutional error the introduction of testimony relating to defendant's silence when in custody. *Scales v. State,* 64 Wis.2d 485, 219 N.W.2d 286 (1974); *State v. Johnson,* 60 Wis.2d 334, 342–344, 210 N.W.2d 735 (1973); *Buckner v. State,* 56 Wis.2d 539, 548, 549, 202 N.W.2d 406 (1972). *Cf. State v. Dean,* 67 Wis.2d 513, 536, 537, 227 N.W.2d 712 (1975).[6] The use of

---

[5] *Martin v. State,* 79 Wis. 165, 176, 48 N.W. 119 (1891). *See also: Dunn v. State,* 118 Wis. 82, 94 N.W. 646 (1903); *Haffner v. State,* 176 Wis. 471, 477–478, 187 N.W. 173 (1922); *Werner v. State,* 189 Wis. 26, 206 N.W. 898 (1926); *Watson v. State,* 195 Wis. 166, 169, 217 N.W. 653 (1928); *State v. Jackson,* 219 Wis. 13, 20, 261 N.W. 732 (1935); *State v. Raines,* 253 Wis. 143, 145, 33 N.W.2d 266 (1948); *State v. Spring,* 48 Wis.2d 333, 338, 339, 179 N.W.2d 841 (1970) (such remarks "violate sec. 885.13(2), Stats., and more recently such remarks have been held violative of the guarantee against self-incrimination in the fifth amendment to the United States Constitution. *Griffin v. California* (1965), 380 U.S. 609, 85 Sup. Ct. 1797, 14 L. Ed.2d 730"); *State v. Tew,* 54 Wis.2d 361, 363, 195 N.W.2d 615 (1972).

[6] "In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." *Miranda v. Arizona,* 384 U.S. 436, 468, n. 37, 86 S. Ct. 1602, 16 L. Ed.2d 694 (1966).

custodial silence to impeach a defendant's exculpatory story was held improper in federal criminal prosecutions in *United States v. Hale,* 422 U.S. 171, 95 S. Ct. 2133, 45 L. Ed.2d 99 (1975) and in state criminal prosecutions in *Doyle v. Ohio,* 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed.2d 91 (1976).[7]

The difference between prosecutorial use of the defendant's silence at trial and prosecutorial use of the defendant's silence at time of arrest is miniscule. We believe that in both circumstances reference to the defendant's silence does "no more than turn on the red light of potential prejudice involving the defendant's fifth amendment rights." *United States v. Arnold,* 425 F.2d 204, 206 (10th Cir. 1970).

---

There are many federal and state cases following this principle. *See, e.g., United States v. Earl,* 529 F.2d 1145 (6th Cir. 1976); *United States v. Ghiz,* 491 F.2d 599 (4th Cir. 1974); *United States v. Guzman,* 446 F.2d 1137 (9th Cir. 1971), *cert. denied,* 404 U.S. 1022 (1972); *United States v. Matos,* 444 F.2d 1071 (7th Cir. 1971); *Younie v. State,* 272 Md. 233, 322 A.2d 211 (1974) and numerous cases cited therein at 322 A.2d 211, 216; *Commonwealth v. Haideman,* 449 Pa. 367, 296 A.2d 765 (1972).

[7] The United States Supreme Court in *Doyle* quoted with approval Mr. Justice WHITE's concurring opinion in *United States v. Hale,* 422 U.S. at 182, 183:

" '. . . when a person under arrest is informed, as *Miranda* requires, that he may remain silent, that anything he says may be used against him, and that he may have an attorney if he wishes, it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony. . . . Surely Hale was not informed here that his silence, as well as his words, could be used against him at trial. Indeed, anyone would reasonably conclude from *Miranda* warnings that this would not be the case.' "

Although constitutional error in this case is subject to the harmless-error rule,[8] we find the error in this case prejudicial. This is not a case where the prosecution casually asked one witness, on one occasion, whether the defendant professed innocence at the time of arrest. Here the prosecution asked two witnesses five different questions raising the issue whether the defendant professed his innocence at the time of arrest. (The questions and answers appear at notes 1 and 2.) In addition, the prosecuting attorney at two different points in his closing statement commented at some length on the defendant's failure to profess his innocence at the time of arrest. (The comments appear at note 3.)

In addition to the impact of this repetition of the error, the nature of the state's evidence and the nature of the defense are also relevant. The evidence against the defendant was sufficient to sustain the convictions, but it was circumstantial. Circumstantial evidence can support a criminal conviction and may be as strong as or stronger than direct evidence.[9] However, in this case the defendant took the stand and specifically and unequivocally denied the offenses entirely. The question for the jury was one of credibility. The jury might well have chosen to believe the defendant's testimony instead of the other witnesses. The erroneously admitted evidence of the silence of the defendant—repeatedly put before the jury—was intended to, and probably did, cast

[8] *Pulaski v. State,* 24 Wis.2d 450, 129 N.W.2d 204 (1964); *Chapman v. California,* 386 U.S. 18, 87 Sup. Ct. 824, 17 L. Ed.2d 705 (1967), rehearing denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed.2d 241.

[9] *Clark v. State,* 62 Wis.2d 194, 197, 214 N.W.2d 450 (1974) and cases cited therein; *Williams v. State,* 40 Wis.2d 154, 161, 162, 161 N.W.2d 218 (1968); *State v. Johnson,* 11 Wis.2d 130, 134, 104 N.W.2d 379 (1960).

doubt on the defendant's credibility. It appears that the prosecution was telling the jury a number of times that the defendant must have had something to hide and was really guilty because he did not protest his innocence at arrest. Yet the United States Supreme Court has labeled in-custody silence as "insolubly ambiguous" (*Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. at 2244) and "so ambiguous that it is of little probative force" (*United States v. Hale*, 422 U.S. at 176). There are a number of possible reasons for a defendant's custodial silence. The defendant's silence "can as easily be taken to indicate reliance on the right to remain silent as to support an inference that [the defendant's trial] testimony was a later fabrication" (*Hale*, 422 U.S. at 177). Evidence of custodial silence in this case not only had low probative value but also had a high potential for great prejudice to a defendant. We therefore conclude that prejudicial error was committed, and a new trial is required. "It may well be that the defendant is guilty of the offense charged against him, but he is entitled to a fair trial according to the established rules of procedure and principles of law." *Boldt v. State*, 72 Wis. 7, 17, 38 N.W. 177 (1888).

*By the Court.*—Judgment and order reversed and cause remanded for a new trial.

BEILFUSS, C. J., took no part.

HANLEY, J. *(dissenting)*. I respectfully dissent from that part of the majority opinion stating that prejudicial error was committed and a new trial is required.

The majority's opinion is based on the hypothesis that reference to the defendant's silence in failing to profess his innocence turned the scale. In so holding the majority have neglected to use the balancing scale of justice.

The overwhelming circumstantial evidence was neither weighed nor referred to in the opinion.

The following evidence was sufficient, without regard to the improper testimony and prosecutorial remarks, to establish the defendant's guilt beyond a reasonable doubt.

1. The defendant owned the .22 caliber semi-automatic pistol used to commit the two murders, and the police found it concealed under the trap door of the defendant's trailer. The testimony established that it was not possible to reach under the skirt of the defendant's trailer from the outside.

2. The defendant informed the officer that he had a single-shot .22 caliber rifle in his trailer, which the officer saw to be in a dismantled condition. At that time the defendant made no reference to his .22 caliber semi-automatic pistol. It must have been obvious to the jury that the voluntary display of a dismantled rifle was to clear himself of any suspicion.

3. Two police officers testified that the defendant admitted that the only fresh tracks which were discovered near the chain saw shop were his tracks. At trial the defendant denied that he had made the admission.

4. The testimony established that while the defendant was at the Wood Tick Bar on the evening before the murders, defendant requested and obtained the keys to Mike Anderson's car, where he knew his pistol was kept, saying that he wished to obtain his clothes and mail from the car. Although the defendant left the bar after obtaining the keys, he denied that he ever entered the vehicle that night, claiming that he forgot about his belongings.

5. Although the defendant testified that he was in his trailer next to the chain saw shop when the murders occurred, he denied hearing any of the nine shots which were fired. The distance from the trailer to the shop was estimated to be about 37 feet.

6. On the afternoon following the murders, Mike Anderson saw the defendant as Anderson was getting off the school bus. The defendant approached Anderson and said that Anderson was supposed to say that the gun was his.

7. There was testimony that on the Friday before December 11, 1974, the deceased, Marvin Collins, Jr., slapped the defendant and stated "he was going to make a man out of him if it was the last thing he ever did."

In this writer's opinion the improper testimony and prosecutorial remarks relative to defendant's silence in failing to profess his innocence are so immaterial and irrelevant that no jury would consider it worthy of deliberation. The impropriety referred to at most would imply a presumption of guilt. However, this would be sufficiently negated by the standard instruction given in every criminal case.

"The law presumes every person charged with the commission of an offense to be innocent. This presumption attends the defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt. The defendant is not required to prove his innocence." Wis. J.I.—Criminal 140.

This court has held that errors occurring in the course of a trial will not serve to overturn a conviction unless it clearly appears that had they not occurred, the result would probably have been more favorable to the defendant. *Woodhull v. State*, 43 Wis.2d 202, 217, 168 N.W.2d 281 (1969).

Both the United States Supreme Court and this court have stated: "While a defendant is most certainly entitled to a fair trial, he is not necessarily entitled to a perfect trial." *Nyberg v. State*, 75 Wis.2d 400, 411, 249 N.W.2d 529 (1977); *Michigan v. Tucker*, 417 U.S. 433, 446 (1974).

I believe the defendant was fairly tried and convicted upon ample credible evidence and would affirm the judgment of conviction. I am authorized to state that Mr. Justice CONNOR T. HANSEN joins in this dissent.