STATE of Wisconsin, Plaintiff-Respondent,

v.

Maurice S. EWING, Defendant-Appellant.†

Court of Appeals

*No. 2004AP2942–CR. Submitted on briefs June 27, 2005.
—Decided August 16, 2005.*

2005 WI App 206

(Also reported in 704 N.W.2d 405.)

† Petition to review denied 11-11-05.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David R. Karpe*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general and *William C. Wolford*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. Maurice Ewing appeals a judgment convicting him of armed robbery while masked and three counts of false imprisonment, as well as an order denying his motion for postconviction relief. Ewing argues his trial counsel was ineffective because he failed to object to the State's impermissible references to his silence. We disagree and affirm the judgment and order.

## BACKGROUND

¶ 2. At approximately 10:30 p.m. on May 5, 2003, two masked men with guns robbed a McDonald's restaurant on Fish Hatchery Road in Fitchburg. A McDonald's employee identified Ewing, who was a former employee, as one of the robbers based on his voice and eyelashes.

¶ 3. On May 6, Ewing went to the restaurant's corporate offices. When he was there, he spoke with Todd Stetzer, a detective with the Fitchburg Police Department. Ewing told Stetzer that he had recently been living with various friends. However, he had just obtained an apartment on Monterey, but did not know the apartment number. Ewing stated that on May 5 he had worked at the DeForest McDonald's, then spent time with his children, dropping them off at their mother's house between 8:30 and 9 p.m. After that, he was "kicking it" with some friends. Ewing was not able to give Stetzer times or locations, but stated he had been at Clarissa's house and Sarah's house. He also indicated that his brother was with him.

¶ 4. On May 7, Ewing was arrested. After he was advised of his rights, Ewing again spoke to Stetzer about his whereabouts on May 5, essentially giving the

same information that he had on May 6. Ewing pled not guilty and a jury trial commenced on October 30, 2003.

¶ 5.  Ewing did not testify at trial. He presented three witnesses to support his alibi that he was moving furniture to his new apartment at the time of the robbery. Jamael Ewing testified he was helping Ewing move items to Ewing's new apartment on Monterey from 10 p.m. until after 11 p.m. Shannon Wilson, the mother of Ewing's children, testified that Ewing left her house around 9 p.m., picked up Jamael, and then returned to her house to pick up his belongings. She stated he took three loads of items to his new apartment, departing from her house the final time around 11 p.m. Calvin Ewing testified that about 9:30 p.m., Ewing and Jamael were moving items from Wilson's house into the apartment on Monterey that Calvin, Jamael, and Ewing's father shared.

¶ 6.  The jury found Ewing guilty on all four counts. Ewing moved for postconviction relief, claiming ineffective assistance of counsel. Ewing argued trial counsel should have objected to certain testimony by Stetzer and the State's closing argument as impermissible comments on his silence. At trial, the prosecutor asked Stetzer, "[Ewing] didn't tell you he was moving that night, is that correct?" Stetzer answered, "Absolutely not." On rebuttal, the prosecutor asked Stetzer, "In fact, when you talked to Mr. Ewing, did he say anything about moving furniture that night at all?" Stetzer answered, "No." During the State's closing argument, the prosecutor stated, "When [Stetzer] talks to the defendant, the defendant doesn't say, no last night I was moving." The prosecutor also said, "The next morning he couldn't remember he was moving."

331

¶ 7. After a *Machner*[1] hearing, the circuit court denied Ewing's motion. It concluded admission of the evidence did not violate Ewing's right to silence because he never invoked that right. It also rejected Ewing's argument that the evidence was improper impeachment on a collateral matter because the alibi evidence was the central issue in the case.

## STANDARD OF REVIEW

¶ 8. The question of whether the State violated Ewing's right to remain silent involves the application of constitutional principles to undisputed facts, which is a question of law that we review independently. *State v. Adams*, 221 Wis. 2d 1, 6, 584 N.W.2d 695 (Ct. App. 1998). Additionally, our review of an ineffective assistance of counsel claim presents a mixed question of fact and law. *State v. Erickson*, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). We do not disturb the circuit court's factual findings unless they are clearly erroneous. *Id.* However, whether counsel's conduct amounts to ineffective assistance is a question of law that we review independently. *Id.*

## DISCUSSION

¶ 9. Ewing argues the State impermissibly commented on his silence in violation of his constitutional rights. Because defense counsel did not object, we examine Ewing's argument in the context of his ineffective assistance of counsel claim. To establish ineffec-

---

[1] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

tive assistance of counsel, a defendant must show both that trial counsel's performance was deficient and that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 697 (1984); *State v. Pitsch*, 124 Wis. 2d 628, 633, 369 N.W.2d 711 (1985). Performance is deficient if it falls outside the range of professionally competent representation, measured by the objective standard of what a reasonably prudent attorney would do under the circumstances. *Pitsch*, 124 Wis. 2d at 636–37. Prejudice is demonstrated where, but for counsel's deficient performance, there was a reasonable probability of a different trial outcome. *Erickson*, 227 Wis. 2d at 773.

¶ 10. Here, whether Ewing's trial counsel was ineffective primarily hinges on whether the testimony Ewing complains of on appeal constitutes impermissible comments on his silence. Accordingly, we first turn to that threshold question.

¶ 11. Defendants have a constitutional right to remain silent. U.S. CONST. amend. V; *Miranda v. Arizona*, 384 U.S. 436 (1966); WIS. CONST. art. I, § 8(1). That right is violated if the State comments on the defendant's silence during a criminal trial. *Griffin v. California*, 380 U.S. 609, 614 (1965).

> The test for determining if there has been an impermissible comment on a defendant's right to remain silent is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent. The court must look at the context in which the statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact on the jury.

*State v. Nielsen*, 2001 WI App 192, ¶ 32, 247 Wis. 2d 466, 634 N.W.2d 325 (citations omitted).

¶ 12.   Ewing argues that when the State introduced evidence regarding his failure to tell police he was moving on the night of the robbery, it impermissibly commented on his silence.[2] Ewing's argument rests on two faulty premises. First, it assumes that Ewing exercised his right to silence. However, Ewing provides no record citation to support that assertion. Ewing was interviewed twice by police, once before and once after his arrest. In both instances, he provided a purportedly complete account of his whereabouts the night of the robbery.

¶ 13.   Second, Ewing's argument assumes the complained-of testimony involved his silence. While Ewing characterizes the testimony as comments on his non-statements or his failure to reveal his alibi, we are unpersuaded that the testimony amounted to a comment on his silence. Ewing provided alibi evidence in his interviews with police – that he was "kicking it" with friends, stopping at several friends' houses, at the time of the robbery. The information Ewing provided was inconsistent with the alibi witnesses he provided at trial, who testified that he was moving at the time of the robbery. When the prosecutor asked Stetzer whether Ewing stated he was moving the night of the robbery, the prosecutor was not eliciting comment on Ewing's silence or what Ewing did not say. Rather, the prosecutor was highlighting the inconsistency between what

---

[2] Ewing does not argue that the State impermissibly commented on his choice to not testify in his own defense at trial. Accordingly, we are concerned only with Ewing's pretrial right to silence.

Ewing *did* say and what his alibi witnesses testified to at trial. Accordingly, we cannot conclude that the testimony "was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent." *See id.*

¶ 14.   The authority Ewing cites in support of his arguments is equally unpersuasive. Ewing cites *State v. Feela*, 101 Wis. 2d 249, 268, 304 N.W.2d 152 (Ct. App. 1981), for the proposition that the State may not question a defendant on his failure to reveal an alibi to police. However, because Ewing did not testify, the State did not question him at all. Further, Ewing did reveal an alibi to police, albeit a different one than he presented at trial. Accordingly, *Feela* is inapplicable. Similarly, Ewing quotes *State v. Wulff*, 200 Wis. 2d 318, 340–41, 546 N.W.2d 522 (Ct. App. 1996), *rev'd on other grounds*, 207 Wis. 2d 143, 557 N.W.2d 813 (1997):   "The government may use a defendant's post-arrest silence to impeach his or her testimony in certain respects, but it may not argue that the defendant's silence was inconsistent with his claim of innocence." Again, Ewing did not testify, and therefore the State could not impeach his testimony. Nor could the State argue that Ewing's silence was inconsistent with his claim of innocence, because he never exercised his right to remain silent.

¶ 15.   Ewing also quotes extensively from *United States v. Hale*, 422 U.S. 171 (1975), in support of his argument that a defendant is permitted to stop talking without giving police his entire story or to refuse to answer certain questions. However, Ewing purported to give police a full account of his whereabouts on the night of the robbery, and he did not refuse to answer any questions. *Hale* is therefore inapplicable here.

335

¶ 16. Alternatively, Ewing argues that if the testimony was not an impermissible comment on his silence, his trial counsel was still ineffective for failing to object. He contends that a witness's testimony cannot be impeached by the non-statement of another.[3] However, Ewing's argument and supporting legal authority[4] rests on the same faulty factual premise we rejected above: that Stetzer testified regarding Ewing's silence or non-statement. The prosecutor impeached the alibi witnesses with Ewing's statements, not his non-statements.

¶ 17. Ewing also relies on *State v. Sonnenberg*, 117 Wis. 2d 159, 344 N.W.2d 95 (1984). *Sonnenberg* held that certain extrinsic evidence, introduced to impeach the defendant's testimony on a collateral matter, was inadmissible. *Id.* at 174–75. However, Ewing did not testify. Further, we agree with the circuit court's conclusion that Ewing's whereabouts the night of the robbery was not a collateral matter, it was the central issue in the case.

¶ 18. Because Ewing fails to establish that the evidence was inadmissible, counsel was not deficient for failing to object. Accordingly, Ewing's ineffective assistance claim fails.

*By the Court.*—Judgment and order affirmed.

---

[3] Ewing's alternative argument begins by asserting the evidence was objectionable on due process grounds. However, his subsequent argument challenges admissibility as a matter of evidentiary, not constitutional, law.

[4] Ewing cites *Hilton v. Hayes*, 154 Wis. 27, 32, 141 N.W. 1015, *overruled on other grounds by Gelhaar v. State*, 41 Wis. 2d 230, 241 n.1, 163 N.W.2d 609 (1969), and *Reichhoff v. State*, 76 Wis. 2d 375, 251 N.W.2d 470 (1977).